YORK MFG. CO. v. COLLEY et al.
(No. 5363.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 23, 1914. Rehearing Denied Jan. 13, 1915.)

1. CORPORATIONS (§ 642*)—FOREIGN CORPORATIONS—"DOING BUSINESS."

In an action on a contract to install an ice manufacturing plant and enforce a lien thereon, defended on the ground that plaintiff, a foreign corporation, had not complied with the statute as to filing articles and obtaining a permit to do business, evidence showing in substance that plaintiff was engaged in selling and installing machinery for such plants, an engineer being furnished to supervise the installation who would not turn over the plant until acceptance and payment of the purchase money, *held* sufficient to show the doing of business in the state, within the meaning of Rev. St. 1911, art. 1314.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520-2527; Dec. Dig. § 642.*

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

2. COMMERCE (§ 69*)—INTERSTATE COMMERCE—FOREIGN CORPORATIONS—RIGHT TO SUE.

Though a foreign corporation violates Rev. St. 1911, art. 1314, prohibiting such a corporation from doing business unless it obtain a permit, etc., it may still sue on a contract, if the execution of the contract and the performance thereof constitute interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 100, 113-119; Dec. Dig. § 69.*]

3. COMMERCE (§ 40*)—FOREIGN CORPORATIONS—INSTALLATION OF ICE PLANT.

Where a foreign corporation contracts to install an ice manufacturing plant in the state, the labor to be furnished by the purchaser, but under supervision of an engineer furnished by the corporation, the engineer having orders not to turn over the completed plant until written acceptance, the corporation is engaging in a strictly local business, whether it be considered that it installed the ice plant or that it merely contracted to supervise the erection of machinery sold by it, and the contract is not interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 29, 30; Dec. Dig. § 40.*]

Appeal from District Court, Wilson County; F. G. Chambliss, Judge.

Action by the York Manufacturing Company against V. B. Colley and J. E. Billingsley. From a judgment dismissing the cause, plaintiff appeals. Affirmed.

N. C. Abbott, of Houston, for appellant.

MOURSUND, J. Appellant sued appellees, V. B. Colley and J. E. Billingsley, for a balance due upon a certain written contract and to foreclose a lien upon certain ice manufacturing machinery. The defense was made that appellant was a foreign corporation organized for pecuniary profit; that it maintained an office and was doing business in Texas, and had not obtained a permit therefor, and for such reasons was not authorized to maintain a suit on said contract in any of the courts of the state. By supplemental petition appellant admitted that it was a foreign corporation without a permit to

do business in Texas, but denied that it maintained an office or was doing business in the state, within the meaning of the statute, or that its act in making the contract sued on, or the performance of the provisions thereof, was doing business in Texas, and alleged that the making of the contract and doing what was called for therein and actually done was in strict performance of an interstate transaction. The trial court found that the acts of appellant were in violation of the statutes of the state, and that it was therefore not entitled to maintain the suit, and entered judgment dismissing the case. Findings of fact and conclusions of law were filed as follows:

"Conclusions of Fact.

"(1) It is admitted by the plaintiff that it is a corporation, organized for pecuniary profit, under the laws of the state of Pennsylvania, and that at the time of making the contract with the defendants, sued upon in this cause, it had not filed with the Secretary of State, or the state of Texas, a duly certified copy of its articles of incorporation, and that it had no permit to transact business as a foreign corporation in this state, as provided by articles 1314 and 1318 of the Revised Civil Statutes of Texas, and that it has not now nor has it ever had such permit to do business in Texas.

"(2) I find, as a matter of fact, that said plaintiff maintained a special or branch office in the state of Texas from the year 1901 to 1912, and so maintained same when plaintiff contracted to erect the ice plant with defendants, and that it had its agent in Texas, and warehouses, in which it kept material for carrying on its business, and sold and delivered same to customers in different portions of the state.

"(3) I find, as a matter of fact, that the plaintiff furnished the material and part of the labor to erect, and that it did erect and construct, the ice plant in the town of Stockdale for the defendants, which is the ice plant for which this plaintiff is suing the defendants for the purchase money and to foreclose a lien thereon; and I find that said plant was to be erected and constructed for a lump sum of money, and that plaintiff had the exclusive possession and control of said plant and the erection thereof, which said construction consumed from 25 to 30 days' time to complete.

"(4) I find that plaintiff, through its servants and employés, drew the plans for the construction of said plant, and that it was constructed by their employés according to said plans.

"(5) I find that some of the plans used in constructing the ice plant were made in Texas.

"Conclusions of Law.

"(1) I find that, as a matter of law, the furnishing of said material, labor, and the construction of said ice plant for a lump sum of money was not interstate commerce.

"(2) I find, by the making of said contract, the furnishing of material, the labor performed in the construction of said ice plant, together with the exclusive possession and control of said construction by the plaintiff, the York Manufacturing Company was transacting business in this state and in violation of law.

"(3) I find, by the establishing of said special or branch office in the state of Texas, and having agents in charge thereof, same was in violation of law.

"(4) Therefore, by reason of the foregoing, I find that plaintiff cannot maintain action."

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appellant's first and second assignments of error read as follows:

"(1) The trial court erred in finding on the evidence produced that the plaintiff, at the time of making the contract sued on, was doing business in the state of Texas, within the meaning of the statutes thereof.

"(2) The court erred in his second conclusion of law that the making of said contract, the furnishing of material, the labor performed in the construction of said ice plant, together with the exclusive possession and control of said construction by the plaintiff, was transacting business in the state and in violation of law."

Under these assignments, appellant contends that the making of the contract sued upon and its performance constituted the transaction of interstate commerce.

[1] We will set out the most important portions of the contract, and make a brief statement of the most important facts proven. As a part of the "proposal and specifications" attached to the contract, we find the following provisions:

"The York Manufacturing Company to furnish one erecting engineer at $6 per day and expenses to superintend the erection of the machinery, apparatus, or plant furnished by it; the purchaser to furnish one engineer to assist in erecting and putting machinery, apparatus, and plant together and to receive and carry out instructions from the York Manufacturing Company in the handling of the same. The York Manufacturing Company to have entire charge of the plant during the erection of same, and, when ready for operation, it shall be operated in accordance with the directions given by the representatives or engineer of the York Manufacturing Company, or its representatives will furnish a written notice to purchaser of the time when the plant is ready for charging. The limit of time which the York Manufacturing Company's engineer is to remain with the plant for the purpose of instructing the purchaser's men and making needed adjustments to the machinery and apparatus or plant shall be —— days from the date when the plant is ready for charging, and, if detained beyond that period through no fault of the York Manufacturing Company, the purchaser shall pay for his services and the services of his assistants, after the expiration of said period, at the rate of $7 per day and all expenses for each man."

"The York Manufacturing Company reserves the right to change the construction or design of the machinery, apparatus, or plant, if in its judgment such change is to the interest of all parties and does not vary the results."

The contract, to which the "proposal and specifications" are attached, contains the following clause:

"The party of the first part agrees to construct for and deliver to the party of the second part on the railroad depot of Stockdale, Tex., with freight allowed, the machinery, apparatus, or plant mentioned and described in the specifications hereto attached, which specifications, together with the agreements and guarantees therein contained on the part of each of the parties hereto to be kept and performed, are hereby expressly made a part of this agreement. The premises of the party of the second part, in which the said machinery, apparatus, or plant is to be placed, are situated in the town of Stockdale, county of Wilson, state of Texas."

The contract also provides that title to the property is reserved by appellant until all purchase money is paid, and that, upon default, appellant shall have the right to take and remove the same, in which event appellees shall pay appellant "all expenses incurred in installing and removing same." This contract was signed in Texas in behalf of appellant, by C. J. Bauderer, its agent, on April 24, 1912, but provided that it should not become operative until approved in writing by the officers of the company under its corporate seal. Such approval was indorsed thereon at appellant's home office at York, Pa., on May 28, 1912. All machinery and material furnished under this contract was shipped from outside the state of Texas. Appellant sent Mr. Campbell, the erecting engineer, pursuant to the contract, and he began the work of installing the machinery on July 13, 1912, and surrendered possession thereof to appellees on August 9, 1912. Appellant, in accordance with the provisions of the contract, charged $144 for Campbell's services, as well as $23.70 for his expenses. Campbell did most of the work incident to the erection and installation of the machinery. He had charge of the plant while it was being erected; and declined to deliver possession thereof until appellees signed an acceptance of the same. The acceptance was signed after the plant had been erected and in operation for about a week. Campbell had been operating it. He told appellees that he was not allowed to leave a job until he got his papers for it, meaning a written acceptance. Campbell made one change in erecting the plant, stating:

"I am instructed to comply with the requests as long as I can, but, if there is any kick, to put it according to the blue prints."

Appellee Billingsley, speaking of Campbell, testified:

"It was necessary for us to have somebody to do the work he did; but it wasn't necessary for the York people. I told Bauderer, 'I can hire an engineer for $3 a day and cut out that six;' and he said, 'You had better let him come on; they erect them plants and know how.' "

There was evidence to the effect that Campbell was authorized in all cases to request the purchasers to give a written acceptance in order to show their satisfaction. There was also evidence to the effect that he was not authorized from appellant's main office to do anything in connection with the contract, except as provided therein, and was not authorized to assume control over the machinery after it was installed. However, the record discloses that Campbell was under the direction of F. W. Pilsbury, who was in charge of appellant's Chicago office, and there is no testimony to show what authority or instructions he was given by Pilsbury. Appellant furnished from its home office about 10 blueprints and drawings showing how the various portions of the machinery were to be erected and installed; also a blueprint made by Bauderer in Texas showing the floor plan and side elevation of the building in which the machinery was to be placed. Appellant maintained a branch office at Houston, Tex., from August 1, 1901, until

August 16, 1912. It carried no stock at such office, but had a depot in Houston, at which it carried, at that time, a stock of fittings amounting to about $5,562. Since the last-named date its stock has been carried on consignment with two Texas corporations. About July 18, 1912, appellant supplied appellees from its stock at Houston with goods of the value of $5.22, but such goods were not furnished under the contract sued upon. Prior to making the contract sued upon, appellant had erected 14 ice plants in Texas.

[2] The evidence sustains a finding to the effect that appellant, at the time it made the contract sued upon, was engaged in the transaction of business in Texas and maintained an office in Texas, within the meaning of article 1314 of Revised Statutes of 1911. Marconi Wireless Telegraph Co. of America v. Commonwealth (Mass.) 106 N. E. 316; Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127. But it appears that, if the execution of the particular contract sued upon and its performance constituted interstate commerce, then appellant is entitled to sue upon such contract, regardless of the violation of the statute in respect to other transactions or by maintaining an office within the state. T. & P. Co. v. Davis, 54 S. W. 381, 93 Tex. 378. It therefore becomes necessary to decide whether the contract sued upon involves only an interstate commerce transaction.

[3] Appellant contends that it did not agree to install and did not in fact install the machinery, but merely furnished an engineer to superintend the installation by appellees of the machinery. But we think it is evident, from a reading of the contract, that appellant retained the possession of the property until it should be installed, and virtually bound itself to deliver a finished plant, with the exception that appellee should furnish the labor necessary to carry out the engineer's instructions. The contract was one to install machinery, provided appellees furnish labor to assist appellant's engineer, and the fact that all the work was not done by appellant's engineer does not alter the fact that the contract was for the delivery of a completed plant to be installed in this state. Appellant furnished the services of its engineer to be performed in this state, contracting in a manner making it compulsory upon appellees to accept and pay for such services. The evidence discloses the construction placed upon the contract by appellant's engineer, and there is no testimony to the effect that he in any way violated the instructions or exceeded the authority given him by Pilsbury. There are a number of cases in which it has been held that contracts for the sale of machinery in one state to be installed in another by the seller are protected by the commerce clause of the federal Constitution. See Flint & Walling Mfg. Co. v. McDonald, 21 S. D. 526, 114 N. W. 684, 14 L. R. A. (N.

S.) 673, 130 Am. St. Rep. 735; Milan Mill v. Gorten, 93 Tenn. 590, 27 S. W. 971, 26 L. R. A. 135; Gates Iron Works v. Cohen, 7 Colo. App. 341, 43 Pac. 667. But our Supreme Court, in the case of Smythe Co. v. Ft. Worth Glass & Sand Co., 105 Tex. 8, 142 S. W. 1157, declined to express an opinion upon the question. This court, in the case of Leschen & Sons Rope Co. v. Moser, 159 S. W. 1018, held that an agreement to furnish a supervising engineer at a certain price, provided the purchasers wanted him, would not alter the character of the transaction. It appeared to us that the erection of the tramway was such an exceptional, as well as gigantic and complicated, enterprise that purchasers might well decline to buy, unless an engineer familiar with such work was furnished to superintend the erection thereof. In addition the facts showed an immediate delivery of all material, and no requirement that the purchasers should accept and pay for the services of the engineer. With the light before us at that time, we felt confident our decision was correct. The trend of practically all the decisions appeared to be toward holding that any attempt to tax or prohibit without a permit the installation by a nonresident corporation of machinery sold and shipped from without the state was an attempt to regulate interstate commerce and not permissible. Since rendering that decision, we have had occasion, in this case and in other cases, to investigate the question further, and have come to the conclusion that our statement of what we regarded to be the law was broader than was required by the facts of that case, and broader than is justified by the decisions of the United States Supreme Court. In the case of Browning v. City of Waycross, 233 U. S. 16, 34 Sup. Ct. 578, 58 L. Ed. 828, decided by the Supreme Court of the United States on April 6, 1914, it was held that an agent for a foreign corporation, who solicited orders for the sale of lightning rods in another state, received the rods, and erected them for such corporation, the price paid for the rods to the corporation including the duty to erect them without further charge, may be subjected to a municipal tax without violating the commerce clause of the federal Constitution. The court discussed the cases of Caldwell v. North Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336; Rearick v. Pennsylvania, 203 U. S. 507, 27 Sup. Ct. 159, 51 L. Ed. 295, and Dozier v. Alabama, 218 U. S. 124, 30 Sup. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264, saying in part:

"It is evident that these cases, when rightly considered, instead of sustaining, serve to refute, the claim of protection under the interstate commerce clause which is here relied upon, since the cases were concerned only with merchandise which had moved in interstate commerce, and where the transactions, which it was asserted amounted to the doing of local business, consisted only of acts concerning interstate commerce goods, dissociated from any at-

tempt to connect them with or make them a part in the state of property which had not and could not have been the subject of interstate commerce. Thus in Caldwell v. North Carolina the court laid emphasis upon the fact that the shipment of the pictures in interstate commerce in one package and the frames in another was not essential but accidental, for the two could have been united at the point of shipment before interstate commerce began as well as be brought together after delivery at the point of destination. And this was also the condition in the Rearick Case. Indeed, it is apparent in all three cases that there was not the slightest purpose to enlarge the scope of interstate commerce so as to cause it to embrace acts and transactions theretofore confessedly local, but simply to prevent the recognized local limitations from being used to put the conceded interstate commerce power in a straight-jacket, so as to destroy the possibilities of its being adapted to meet changes in the form by which business of an inherently interstate commerce character could be carried on."

The court gave its reasons for the holding above announced in the following language:

"We are of the opinion that the court below was right in holding that the business of erecting lightning rods, under the circumstances disclosed, was within the regulating power of the state, and not the subject of interstate commerce, for the following reasons: (a) Because the affixing of lightning rods to houses was the carrying on of a business of a strictly local character, peculiarly within the exclusive control of state authority. (b) Because, besides, such business was wholly separate from interstate commerce, involved no question of the delivery of property shipped in interstate commerce, or of the right to complete an interstate commerce transaction, but concerned merely the doing of a local act after interstate commerce had completely terminated. It is true that it was shown that the contract under which the rods were shipped bound the seller, at his own expense, to attach the rods to the houses of the persons who ordered rods, but it was not within the power of the parties, by the form of their contract, to convert what was exclusively a local business, subject to state control, into an interstate commerce business, protected by the commerce clause. It is manifest that if the right here asserted were recognized, or the power to accomplish by contract what is here claimed were to be upheld, all lines of demarcation between national and state authority would become obliterated, since it would necessarily follow that every kind or form of material shipped from one state to the other, and intended to be used after delivery in the construction of buildings or in the making of improvements in any form, would or could be made interstate commerce."

This case being the latest expression of the Supreme Court of the United States which has come to our notice, we shall attempt to apply the rules therein enunciated to the facts of this case. Such facts, we think, show clearly that appellant contracted to engage in and did engage in the strictly local business of installing an ice manufacturing plant; but, were it conceded that it merely contracted to engage in and did engage in the business of supervising and superintending the erection of an ice plant, such business was a strictly local business. In either event, the contract calls for the

transaction of business in this state without having obtained a permit. Appellant bound itself to connect or superintend the connection of, the machinery with property in this state which had not been the subject of interstate commerce. Does the state have to permit such local business to be conducted without a permit because the material to be erected into a finished plant and then delivered to the buyer was ordered from the foreign corporation and shipped from its domicile in another state? The court, in the Browning Case above quoted from, declined to express an opinion concerning "how far interstate commerce might be held to continue to apply to an article shipped from one state to another, after delivery and up to and including the time when the article was put together or made operative in the place of destination in a case where, because of some intrinsic and peculiar quality or inherent complexity of the article, the making of such agreement was essential to the accomplishment of the interstate transaction." This language suggests that the court may recognize exceptions in cases in which the facts show agreements to supervise the erection or to erect machinery of such a complex character that the sale thereof is impossible, unless such agreement is made. But if such exceptions are recognized by that high court, and must therefore be permitted by the state courts, the facts creating same ought to be alleged and proven. When a foreign corporation is not content with the privilege of having its agents come into this state and take orders for its goods, ship same to our citizens, and collect therefor in our courts, but contends that it has the further right to transact the business of installing machinery sold by it, so as to connect it with, and make it a part of, the property in this state which was not the subject of interstate commerce, the burden certainly rests upon it of showing that, if it be prohibited from transacting such local business, such prohibition will, on account of the complex character of its machinery, affect the sale thereof to such an extent as to be a restriction or regulation of its right to sell such machinery. In this case appellant has not pleaded or proved that the contract to install or to furnish an engineer was necessary to enable it to make the sale to appellees. A contract relating solely to interstate commerce can be sued upon in our state courts; but, as this one related partially to a strictly local business not shown to be essential to the conducting of the interstate business, the rule announced in the case of Railway v. Davis, supra, does not apply, and appellant has no right to maintain this suit in our courts.

We therefore affirm the judgment of the trial court.