## J. J. SEGAL V. MCCALL COMPANY. ·

No. 2452.   Decided March 29, 1916.

**1.—Unlawful Contract—Restraint of Trade—Fixing Prices—Anti-trust Act.**

A contract between a merchant in New York (a fashion company) and one in Texas, whereby the former sells and delivers merchandise (patterns) to the latter, who, by the agreement, is not to sell them "for other than catalogue retail prices," and not to "sell any other patterns . . . during the term of this contract," was unlawful, being violative of the Texas Anti-Trust Act (Act of March 31, 1903, Laws, 28th Leg., ch. 94, p. 119), in that it fixes the price of sale in Texas, and prohibits the selling of other patterns by the purchaser. (P. 59.)

**2.—Same—Interstate Commerce.**

The Texas Anti-Trust Law (Act of March 31, 1903) was not intended to affect transactions constituting interstate commerce, these being beyond the power of its Legislature to regulate. But a contract between a New York and a Texas merchant for the sale and delivery of goods to the latter, though so far interstate commerce, so far as it regulates the price to be charged by the latter for sale at retail in Texas after delivery of the goods there, and prohibits the dealer from buying from others, is not interstate commerce. Such contract is forbidden by the Texas statute and can not be the basis of a recovery. (Pp. 59, 60.)

**3.—Same.**

The fact that a contract is in part a transaction constituting interstate commerce does not deprive the State of the power to regulate it so far as it deals with commerce solely within the State, such as the sale of such article of commerce by the Texas purchaser after it has been sold and delivered to him. Such contract if unlawful in its restrictions on such dealings in Texas is not enforceable. (Pp. 59, 60.)

Questions certified from the Court of Civil Appeals for the Sixth District in an appeal from Marion County.

*R. R. Taylor,* for appellant.—The contract is one prohibited by the anti-trust law. 2 Sayles' Civ. Stats., title 108, p. 1878; Figure, Hinkle & Davis v. Pabst Brew. Co., 90 Texas, 298; Texas Brewing Co. v. Templeman, 90 Texas, 277; Texas & P. Coal Co. v. Lawson, 89 Texas, 394; Houck & Dieter v. Anheuser-Busch Brew. Assn., 88 Texas, 184; Pasteur Vaccine Co. v. Burkey, 22 Texas Civ. App., 232.

If it were originally interstate commerce, it certainly ceased to be when the patterns were delivered to the appellant in this State, and the same would then become subject to regulation by the statutes of Texas, and was in violation of the said anti-trust laws of Texas. Figure, Hinkle & Davis v. Pabst Brewing Co., 90 Texas, 298; Sayles' Texas Civil Statutes, art. 5319.

*Armistead & Benefield,* for appellee.—A contract between a citizen of New York and a citizen of Texas for sale of certain articles only to the latter in the city where he did business, is not prohibited by the anti-trust laws of Texas, as such acts could not be held to apply to interstate commerce, since such construction would render it in violation of the Constitution of the United States, article 1, section 19.

Albertype Co. v. Feist Co., 102 Texas, 219; Cooper Mfg. Co. v. Ferguson, 113 U. S., 727; Asher v. Texas, 128 U. S., 129; authorities cited in the brief of George Q. McCracken in the Albertype vs. Feist Co., case above; the McCall Co. v. Stiff Dry Goods Co., 142 S. W., 659.

MR. JUSTICE YANTIS delivered the opinion of the court.

The case is presented on certified questions from the Court of Civil Appeals for the Sixth District. The statement of the honorable Court of Civil Appeals, and the questions certified, are as follows:

"The McCall Company, plaintiff in the court below, is now, and was at the date of the institution of this suit, a private corporation with its residence and place of business in the State of New York. The record shows that in May, 1905, it entered into the following written contract with J. J. Segal, defendant below, who was at the time a resident of the State of Texas:

"'City or Town Jefferson State Texas Date May 15, 1905.

"'The McCall Company, 113-115-117 West 31st Street, New York.

"'Please deliver to Morgan Line at New York City, addressed to me, a stock of McCall Patterns, at the uniform price of 7½ cents for each pattern (excepting those retailed for 10 cents, the price of which is 5 cents each), amounting to $200.97 net, including the July issue $42.42 payable thirty days after shipment; $33.55 to take up exchange credit of like amount; and the balance $125 is to remain as a standing credit, which, together with the $75 now on hand, makes a total of $200, which is to remain as a standing credit during the term of this contract-order, upon which interest is to be paid by me at the rate of four per cent per annum, semi-annually, January and July 1. When this contract is closed as herein provided, patterns unopened and not defaced and in good saleable condition, purchased of you under this contract-order, may be returned, at prices stated above in payment for said standing credit. Also ship me each month by Morgan Line not exceeding an average of $20 per month of your own selection of the new monthly patterns, at same prices as above, commencing with August issue; also Fashion Sheets and other publications in quantities, and at prices specified below, during the term of this contract, commencing with July issue. (Then follows a list of items and details not material.)

"'We will reorder at the prices named, once each week or oftener, all patterns sold, thus keeping patterns on hand as above specified. The patterns are not to be sold for other than catalogue retail prices, and the stock of patterns is to be kept and offered for sale on the first (main) floor. We will send you an inventory of our stock of patterns on hand at your request, not exceeding twice each year. All goods ordered for delivery are to be paid for on or before the 5th day of the month succeeding date of shipment; if not then paid, subject to sight-draft. All prices quoted are net. We will not sell any other patterns than the McCall Patterns received from you during the term of this contract-order. We will not transfer the stock of McCall Patterns from

Jefferson, Texas, without your written consent, and we will pay all transportation charge to and from your New York office.

"*'Discarded Patterns.* All patterns purchased from you under this contract-order that are reported discarded by you semi-annually—January and July—can be returned by us at 100 per cent contract price, in exchange for other patterns at full contract price, at any time within sixty days from the date such discarded patterns are respectively reported by you, provided this contract shall be in force at the time of such return. All patterns returned by us under any such discard report are to be credited to a special account, to be known as our discard exchange account, the credit to same to continue for a period of six months from the date of such discard report, unless this contract shall be sooner terminated; and all patterns ordered by us within such period of six months and while this contract is in force, excepting our monthly standing order, shall be charged to such discard exchange account unless our credit to the same is earlier exhausted.

" 'If either of us shall intentionally break this contract or shall refuse or fail promptly to perform the same after two weeks' notice in writing given by the other, then the other shall have the right to exercise the option of being released from all future obligations under it, and to recover and receive as liquidated damages, and not as a penalty, a sum equal to the agreed charge for Fashion Sheets during the entire term of this contract. Failure to require compliance with the strict letter of this contract-order shall not forfeit nor prejudice any right thereunder, nor constitute a waiver thereof. This contract is to remain in force from date, and for five years after first shipment of patterns, and thereafter until the expiration of three months' notice given by either party in writing, subsequent to the expiration of such five years. All terms are in printed or written form. Signed in duplicate after being read. Date May 15, 1905. Purchaser's name.....................

" '*Guarantee Against Loss in Patterns.* It is agreed that at the end of five years and three months from date of first shipment of patterns, provided this contract shall have continued in force so long, the above purchaser may take an invoice of the stock of patterns on hand, purchased under this contract, and if the result of the business shows that the above purchaser has paid us more cash for patterns purchased under this contract than has been received for them, we will, upon demand made by such purchaser and receipt of the patterns at our New York office within thirty days after the expiration of such five years and three months, pay such loss in cash, provided all terms of this contract have been complied with. The above contract-order is accepted subject to the approval of the home office. The McCall Company (incorporated State of New York). Date May 15, 1905. By James E. H. Cawall, Auditor. Approved and accepted New York, N. Y., May 19, 1905. The McCall Company. By James E. H. Cawall, Auditor.

" '2022.

" 'Date May 15, 1905. It is further understood and agreed as a part

of and supplement to the provisions of the annexed contract that if, at
any time in the months of January and July, in any year during the
term of the said annexed contract, after the discarded patterns reported
by you are taken from our stock in accordance with the conditions of
the annexed contract, the stock of patterns purchased of you then re-
maining in our hands exceeds $400, at cost price, then we shall have
the privilege (provided all the terms of the annexed contract have been
fully complied with by us), after such discards are taken out, of return-
ing to the McCall Company any patterns we may select from such re-
maining stock, to an amount sufficient to reduce our stock to such sum
of $400; and same is to be credited to our current account at full cost
price, in payment for our monthly standing order for patterns under
said contract or for any other patterns that we may order until such
credit is exhausted; it being the purpose of this clause to provide that
we may, if we so elect, reduce our stock on hand, twice each year, to
the sum of $400, exclusive of all discards. In consideration of the
foregoing concession, the McCall Company shall have the right, with
our assistance, to take an inventory of our stock at any time on demand,
and we agree that when our stock on hand at cost price shall have
reached the said amount of $400, we shall not allow the amount thereof
to be reduced below said sum of $400 during the remaining term of
the annexed contract; and if at the termination of said contract it shall
be found that the value of our stock amounts at cost to less than said
sum of $400, we will either order and pay for a sufficient quantity of
new patterns to bring the total to said sum of $400, or pay the difference
to the McCall Company in cash. Accepted—The McCall Company (in-
corporated State of New York). By James E. H. Cawall, Auditor.
Signature J. J. Segal. W.'

"In 1910 the McCall Company instituted this suit against Segal, in
which it seeks to recover the sum of $742.10 claimed as the sum due
upon an itemized and verified account for goods sold and delivered under
the terms of the above contract. It also seeks to recover in the same
action the sum of $411.88 as liquidated damages for the breach of the
contract. Among the defenses interposed by Segal it was urged that
the contract was illegal and void because in violation of the provisions
of both the Federal and State anti-trust laws. The portions of the con-
tract specifically designated as being in violation of those laws are the
following: *'The patterns are not to be sold for other than catalogue
retail prices,* and the stock of patterns is to be kept and offered for
sale on the first (main) floor. . . . All goods ordered for delivery
are to be paid for on or before the 5th day of the month succeeding date
of shipment, if not then paid subject to sight draft. All prices quoted are
net. *We will not sell any other patterns than the McCall Patterns re-
ceived from you during the term of this contract-order.'*

"We are inclined to hold that this latter provision of the contract is
in violation of the Texas anti-trust statute, under the rule announced
in the case of Fuqua et al. v. Pabst Brewing Co., 90 Texas, 298, 38 S. W.,
29. But in view of a contrary holding in the recent case of McCall Co.

v. J. D. Stiff Dry Goods Co., 142 S. W., 659, in which the honorable
Court of Civil Appeals for the Fifth Supreme Judicial District was
called upon to construe a contract practically the same as this, we have
concluded to certify to your honorable court the following questions:

"1.  Did this contract contain stipulations violative of either the Fed-
eral or the State anti-trust statutes?

"2.  Did those provisions of the contract quoted in the above excerpt
defeat the right of the McCall Company to recover in this suit?

"3.  If you should determine that the contract was not void and
unenforcible, then we desire an answer to the following question:  Does
the contract disclose the transaction of business in this State in such
a manner as to require the McCall Company to procure a permit from
the Secretary of State under the provisions of article 745 of the Revised
Civil Statutes as a condition upon which it can maintain this action
in a court of this State?"

We answer the first question in the affirmative.  The contract is vio-
lative of the State anti-trust statutes.  In this view, and according
also to the plain meaning of the first question, we need not determine
whether the contract is violative of the Federal Anti-trust Act.  We
think the provisions of said contract which obligated Segal to sell no
kind of patterns except the McCall patterns, and to sell at no price
other than the catalogue retail prices, are in restraint of trade within
the meaning of the Texas Anti-trust Act.  It will be noted that the
contract is not in any sense an agency contract.  Neither is the title
to the patterns reserved or attempted to be reserved in the McCall Com-
pany.  The contract is for a naked sale of the goods, with no reserva-
tion of title, or restrictions upon the sale thereof, except the provision
which fixes for the vendee his selling price to the consumer, and the
provision which prohibits the vendee from selling other patterns than
the McCall patterns.  Such a contract is a plain violation of the Texas
Anti-trust Act.  If the contract had exclusive relation to interstate com-
merce it would not violate the Texas anti-trust statute, for the reason
that under the Federal Constitution Congress alone has the power "to
regulate commerce with foreign nations, and among the several States,
and with the Indian tribes."  The State Anti-trust Act was not intended
to encroach upon a field of legislation over which it had no jurisdiction.
A State has no power to regulate interstate commerce, and is prohibited
from so doing by the Federal Constitution.  Only Congress may occupy
this field.  Albertype Co. v. Gust Feist Co., 102 Texas, 219, 114 S. W., 791.
But the provisions of the contract which are obnoxious to the Texas
Anti-trust Act constitute no part of interstate commerce.  They apply
to acts to be performed by the vendee after the interstate commerce
involved in the transaction has been completed.  For a citizen of New
York to sell and transport to a citizen of Texas goods and merchandise
is to engage in interstate commerce; but when the sale and transporta-
tion has been completed, and the property has been delivered in Texas
to a citizen of Texas, the interstate transaction has ended.  The use to
which the property may then be put in Texas, and the acts of the vendee

in relation to it while in Texas, come under the jurisdiction of the Texas laws. When the contract relates wholly to interstate commerce, only the Federal Anti-trust Act could apply; but when the contract contains more, as in this case it does, than a contract for interstate shipment, and embraces acts to be performed after the completed sale and shipment, which are not essential ingredients of an interstate shipment, it falls within the regulation of State law. The Federal law alone controls contracts covering interstate commerce, it is true; but when the contract embraces ingredients necessary to cover interstate commerce, and ingredients not pertaining to interstate commerce, but pertaining to the use of the property after the interstate shipment has been completed, the interstate feature of the contract will not nullify the power of State laws to govern on the features of the contract which are not interstate. Texas laws govern as to such features. This contract is twofold, in that it embraces a full contract for interstate commerce between a citizen of New York and a citizen of Texas, and other provisions for acts to be performed in Texas after the interstate feature of the contract has been entirely fulfilled. The contract fixes the price at which the vendee shall sell at retail in Texas, and provides that he shall refrain from selling at retail in Texas any other pattern than the McCall pattern. This brings it under the jurisdiction of the Texas laws. This was the holding of this court in Fuqua, Hinkle & Davis v. Pabst Brewing Co., 90 Texas, 298, which we think announces the correct rule. This holding is not in conflict with the case of Albertype Co. v. Gust Feist Co., 102 Texas, 219, though it might appear so from a casual reading of the opinion in that case. The opinion in that case was by Mr. Justice Brown, and its holding was that the restraint of trade which appeared from the facts to exist in that case was not prohibited by the Texas Anti-trust Act, it having relation alone to interstate commerce. As governed by the facts of that particular case, the holding was correct. The provision of the contract in that case, which was charged to be in violation of the State Anti-trust Act, was, that the Albertype Company, of the State of New York, would not sell the souvenir albums to any citizen of the city of Galveston other than the Gust Feist Co., whose place of business was in Galveston. For the Albertype Company, of the State of New York, to sell and deliver the albums to a citizen of Galveston, Texas, was interstate commerce. For it to refrain from so doing was to refrain only from engaging, to that extent, in interstate commerce. This would be in violation of only the Federal Anti-trust Act. If the contract had required the vendee, after receiving it in Texas, to sell it at a certain price, or to refrain from selling any other kind of album, then such provision of the contract would have been in violation of the Texas Anti-trust Act, because having relation to certain restricted uses of the property after the interstate shipment had been completed. So that case, when understood in the light of its own facts, is in harmony with the holding of this court in Fuqua, Hinkle & Davis v. Pabst Brewing Co., supra, and other kindred cases, and the holding in this case is in agreement therewith.

These obnoxious provisions of the contract defeat the right of the McCall Company to recover in its suit.   Being in part in violation of law, the taint renders the entire contract illegal and unenforceable.   The law will not give effect to a contract of this nature, or give aid to its enforcement, it being in violation of public policy so to do.   We, therefore answer the second question in the affirmative.

The third question becomes immaterial, and is not answered.

Opinion delivered March 29, 1916.