## McCONNON & CO. v. MARSHALL et al.
### (No. 3110.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 28, 1926.)

1. **Monopolies ⬅⬆17(2) — Regardless of purchase in interstate commerce, contract requiring retailer of goods to sell only seller's goods, in specific county, at fixed prices, violates Texas Anti-Trust Law (Acts 28th Leg. [1903] c. 94).**

Even if sale of goods by medicine and toilet article company to retailer in another state were interstate commerce, a contract obligating retailer to sell only goods of medicine company in specific county only, at prices fixed by them, violates Texas Anti-Trust Law.

2. **Monopolies ⬅⬆23 — Purchaser defending on ground of violation of Texas Anti-Trust Law must show contract of sale violates it (Acts 28th Leg. [1903] c. 94).**

Purchaser and his sureties defending on ground of violation of Texas Anti-Trust Law must show contract of sale repugnant to it, a mere selling of goods of plaintiff only, in specific county only, at fixed prices, being insufficient.

Appeal from District Court, Hunt County; Geo. B. Hall, Judge.

Suit by McConnon & Co. against Edmon Marshall and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

H. L. Carpenter and J. Benton Morgan, both of Greenville, for appellant.

Marvin P. McCoy and G. H. Crane, both of Dallas, for appellees.

HODGES, J. The appellant is a trading corporation with its domicile in Winona, Minn., and a branch office in Memphis, Tenn. In 1918, and some years thereafter, it was engaged in selling certain proprietary medicines and toilet articles at wholesale to dealers who traveled from house to house in the country selling at retail. In December, 1918, appellant entered into a contract with Edmon Marshall, of Sulphur Springs, Tex., to sell its goods. As a basis of credit to be extended by the appellant, Marshall executed the following written guaranty contract, with the other appellees in this suit as his sureties:

"For and in consideration of one dollar, to us in hand paid by McConnon & Co., the receipt whereof is hereby acknowledged, we hereby jointly and severally guarantee, absolutely and unconditionally at all times, payment at Winona, Minn., of any indebtedness to the said McConnon & Co., hereafter incurred by or for Edmon Marshall, of Greenville, state of Texas, by reason of the sale of goods, wares, merchandise and equipment to him, from time to time, by the said McConnon & Co., regardless of his ability or willingness to pay, and we hereby waive notice of any default by the said Edmon Marshall and consent to any extensions by McConnon & Co. of time of payment by him.

"This undertaking shall be an open one and shall so continue at all times without respect to residence or location of business of the said Edmon Marshall until revoked in writing by us, the undersigned sureties, notice of revocation to be served on the said McConnon & Co. at its office in Winona, Minn.

"It is understood that there are no conditions or limitations to this undertaking, except those written or printed hereon, at the date hereof, and that after execution no alteration, change or modification hereto shall be binding or effective, unless executed in writing signed by ourselves and McConnon & Co. under the corporate seal of said company.

"In witness whereof, we have hereunto set our hands and seals at Winona, Minn., this 18th day of December, 1918.

"A. Marshall. [Seal.]
"G. T. Webb. [Seal.]
"Edmon Marshall. [Seal.]
"J. L. Webb. [Seal.]"

During a period extended over approximately two years goods were sold by appellant upon written orders from Marshall and delivered f. o. b. at Memphis, Tenn. From time to time remittances were made by Marshall, and credits entered as shown on accounts attached to the appellant's original petition. In 1920 appellant claimed the sum of $1,469.66 was due from Marshall as an unpaid balance on his running account. The correctness of that claim was disputed by Marshall, a controversy arose, and he and the appellant ceased their business relations. Appellant later filed this suit in the district court of Hunt county against Marshall and the sureties on his guaranty contract, to recover that balance. Marshall and his sureties answered generally and specially, and, among other things, pleaded that the contract under which the goods were sold was illegal, in that it obligated Marshall to sell only the goods of the appellant, only in Hopkins county, and at prices fixed by the ap-

pellant. In a supplemental petition appellant denied generally the averments of the answer.

[1] Appellant insists that the Anti-Trust Laws of Texas (Acts 28th Leg. [1903], c. 94) have no application to the issues involved in this suit, since the dealings of the parties constituted interstate commerce. If the facts stated by the defendants below be true, the contract related to transactions which were to take place in Texas. It may be true that the dealings as to buying and selling between Marshall and appellant constituted interstate commerce; but the contract, if as alleged, bound Marshall to do unlawful acts in Texas. Such a contract would violate the Anti-Trust Law of Texas. Segal v. McCall Co., 184 S. W. 188, 108 Tex. 55.

[2] The court gave as a part of his general charge the following:

"If you believe from the evidence that plaintiff and defendants entered into a contract and agreement that plaintiff was to sell and deliver certain goods, wares, and merchandise to defendant Marshall at prices agreed upon by and between plaintiff and defendant Marshall, to be delivered f. o. b. shipping point and transported to Sulphur Springs, Tex., or such other point as might be designated by defendant Marshall, and that plaintiff and defendant Marshall selected the locality in which he was to sell said goods, and that they selected Hopkins county, Tex., in which to carry on his business and sell said goods; and you further believe from the evidence that defendant Marshall was given the exclusive right by plaintiff to sell said goods in Hopkins county, Tex., and you further believe from the evidence that he was limited (by plaintiff) to sell said goods in Hopkins county alone, or if you believe from the evidence that plaintiff fixed and limited the prices of said goods by which defendant Marshall should sell said goods; and if you believe from the evidence that plaintiff required defendant Marshall to devote all his time alone to the sale of said goods; or if you believe from the evidence that plaintiff required that defendant Marshall should sell said goods alone, exclusive of any other goods—you will find for defendants."

The paragraph, quoted above, was objected to upon the ground that it was too indefinite and submitted a conclusion which, if found to be true, would constitute no defense to the plaintiff's cause of action.

Appellant requested the following special charge:

"You are instructed that under the terms of the guaranty contract signed by the defendants in evidence in this case, plaintiff is entitled to recover the balance due it on all the merchandise bought by the defendant Edmon Marshall from plaintiff.

"If you find from the evidence that the guaranty contract or bond sued on, and the signed orders for goods, are the only contracts between plaintiff and Edmon Marshall, then you will find in favor of the plaintiff for whatever balance you may find from the evidence is due on plaintiff's account."

It thus appears that the only defense submitted in the trial below was that assailing the legality of the contract under which the appellant and Marshall did business. The appellees called as a witness one of appellant's traveling agents, Craven, who testified in substance, that the written guaranty contract and the orders sent in by Marshall for goods were the only contracts existing between the appellant and Marshall. He further testified that he conducted the negotiations with Marshall at the time the guaranty contract was made; that Marshall was not assigned to any particular territory, and was not required to sell exclusively in Hopkins county. Nor was he required to sell only the goods of the appellant, or to sell those goods at any fixed prices. Marshall, who testified by deposition, stated, in substance, that he began business with the appellant in 1918; that he had both a verbal and a written agreement, and a price list. He still had the wholesale price list, but did not have the retail list. The goods were to be sold to him on time, and he was to pay for them as he collected from his customers. He was to pay 50 per cent. of the retail price. He sold the goods in Hopkins county, and in no other place. He was not allowed to get out of that county. They (the appellant) assigned him that territory. He had never sold any of the products outside of the Hopkins county because it was against the rules of the company. Had he done so, they would have stopped him from selling; and had he sold in some other county, the agent in that county would have gotten the credit for the sale. The agreement by which he was to sell only the products of the appellant was verbal.

On cross-examination he testified that the goods were sold and shipped to him f. o. b., Winona, Minn., but they came from Memphis. In answer to cross-interrogatory No. 5, he said:

"Yes, I sold the toilet articles and medicine, but I could not sell at any price I pleased. The price was fixed by the house. I could give the stuff away or sell it at any price I wanted, provided I charged myself with the regular retail price they gave me and gave them one-half of it."

When he made the contract, he lived at Greenville, in Hunt county, and wanted Hunt county, but they told him that county was filled. He then asked for Hopkins county, and they gave him Hopkins county. He said:

"I did have a contract showing they had assigned me all of Hopkins county, which I have lost. * * * I had a verbal agreement with Mr. C. C. Craven, state manager, and I asked for a contract, and he said, 'Why, just go ahead; you do not need it.'"

He sold the appellant's complete line of goods. He wanted to sell another chill tonic that was being put out by other parties, and wrote appellant about it. Appellant wrote

back that they were putting out a chill tablet which they thought was better, and to use that, not to handle any other company's medicine or articles. That letter, he said, had been misplaced.

There was nothing offensive to the statute in the written contracts made and entered into between appellant and Marshall; and if these alone constituted the agreements upon which Marshall and the appellant conducted their business, the court should have directed a verdict in favor of the plaintiff. It devolved upon the appellees to prove that the contract, or a part of it, which formed the basis of the sale of the goods purchased by Marshall from appellant, contained stipulations repugnant to the Anti-Trust Law. The limitations which the appellees allege were placed upon Marshall, and upon which they rely to show a violation of the statute, must have been contractual. It is not sufficient that they were mere directions from appellant, or even instructions, unless Marshall contracted to be bound by those directions or instructions. Nor is the fact that he did observe and obey such directions and instructions conclusive evidence that he had agreed to be so bound. In suits of this character the courts are not concerned about the manner of doing business adopted by the parties, but must be guided by the character of the contract which fixed their rights and liabilities. The question is, not what was the business policy of the appellant, or what Marshall did under the advice and direction of the appellant in choosing territory and making sales, but what did his contract obligate him to do? Unless he bound himself by a contract to do the offensive things, although he did them, he cannot invoke the Anti-Trust Law to defeat the debt he owes. It was not unlawful for him to sell goods exclusively in Hopkins county, or to sell them at prices fixed, or suggested, by the wholesale dealer. Nor was it unlawful for Marshall to confine his sales to goods manufactured and sold by the appellant. The offense, if any, lies in the making of a contract to do those things. The court should refuse to lend its aid in the collection of this debt only when the creditor must rely upon an unlawful contract to make out his case. Simon v. Garlitz, 133 S. W. 461, and cases there referred to. Marshall's testimony concerning the terms of his contract was very indefinite in some important details. He does not say positively, as he might have done, if it were true, that he had obligated himself by contract to sell appellant's goods only, or to sell them exclusively in Hopkins county. His testimony regarding the price is an admission that he could sell at any price he saw fit, provided he gave the appellant one-half of the list price.

Considering the meager character of the testimony relied upon to sustain the verdict of the jury, we think the charge of the court was somewhat indefinite. The special charge should have been given or that issue more clearly submitted in some other form. It is probable that the jury did not fully understand the rules of law which should have been applied in determining the controlling issues of fact.

For the reasons stated, the judgment will be reversed, and the cause remanded.