## BYRD v. CRAZY WATER CO.
### No. 12860.

Court of Civil Appeals of Texas. Dallas.
March 16, 1940.

Rehearing Denied April 27, 1940.

ing breach of a sales contract. The trial court sustained a general demurrer, dismissed the suit, from which Byrd appealed.

The judgment of the court below is sought to be sustained on two grounds, (1) that the contract sued upon was unenforceable, in that is violated the Anti-Trust Statutes of the State, Vernon's Ann.Civ.St. art. 7426 et seq.; and (2) because, under a plain, unambiguous provision, it was terminable at any time by either party.

Appellant resided at, and operated from Los Angeles, Calif.; appellee had its domicile and principal place of business at Mineral Wells, Texas. On June 27, 1930, after a lengthy correspondence and personal interview, the parties entered into a sales contract, whereby appellee agreed to sell and deliver to appellant, in California, a commodity (or drug) known as "Crazy Crystals", manufactured from water produced by wells at the City of Mineral Wells, at $7 per dozen one pound packages. The contract contained, among others, the following stipulations: "It being understood and agreed between both parties entering into this contract that the territory assigned to Party of the Second Part (appellant) by Party of the First Part is the Counties of San Luis Obispo, Kern, Santa Barbara, Ventura, San Bernardino, Los Angeles, Orange, Riverside, San Diego and Imperial", located in the southern portion of the State of California. Also the following (par. 5): "It is further understood and agreed by both Parties hereto that each and every order of every character whatsoever received by the said Party of the First Part for Crystals from any and every person in above described territory, shall be delivered by said First Party to the said Second Party to be by said Second Party 'filled' and for which said Second Party shall have and receive the same credit as if the order had been sent direct by said Second Party to the First Party; or in other words, that each and every order received by the First Party from above described territory shall be filled by and through the said Second Party. Any Crystals' shipped into above territory by Party of the First Part through consent of Second Party, or through error, Party of the Second Part is to receive his commission on same. Duplicate invoices of all orders shipped to above territory are to be made and sent to the party of the Second Part."

It is obvious, we think, that the provisions just quoted created, or tended to

Clark & Rice and Russell V. Rogers, Jr., all of Dallas, for appellant.

W. O. Gross, of Mineral Wells, and W. J. Rutledge, Jr., of Dallas, for appellee.

LOONEY, Justice.

S. L. Byrd, appellant, sued Crazy Water Company, the appellee, for damages, alleg-

create or carry out restrictions in trade or commerce within the meaning of our Anti-Trust Statute, in that, appellee was forbidden to sell the commodity to another within the named counties of California, and appellant was forbidden to operate and sell the commodity outside the territory named.

Similar contracts uniformly have been condemned by our courts. See Fuqua et al. v. Pabst Brewing Co., 90 Tex. 298, 38 S.W. 29, 35 L.R.A. 241; American Brewing Ass'n v. Woods, Tex.Com.App., 215 S.W. 448; Watkins Co. v. McMullan, Tex. Civ.App., 6 S.W.2d 823; Hend son Tire & Rubber Co. v. Roberts, Tex. om.App., 12 S.W.2d 154. The contract clearly contemplated that the commodity dealt with should be shipped from the State of Texas and delivered to the purchaser in the State of California. Being interstate commerce, the commodity was exempt from State regulation until delivered, but delivery being consummated, it became at once a part of the general mass of property subject to the laws of the State of California. However, in the absence of a showing to the contrary, the presumption will be indulged that the law on the subject is the same in California as in this State. (See Watkins Co. v. McMullan, supra, and authorities cited.) Be that as it may, the contract, being obnoxious to the statutes of this State, should not be enforced by our courts, even though it be conceded that it was enforceable in the State of California. (See Watkins Co. v. McMullan, supra, and authorities cited.) So, for the reason just discussed, we do not think the court erred in sustaining the general demurrer and in dismissing appellant's suit.

But there is still another reason why, in our opinion, the court did not err. With reference to its duration, the contract (sec. 3) reads: "It is further agreed by and between the parties hereto that this contract is to run for a term indefinitely from the date hereof, and that the terms of this contract during said period shall not be changed except upon the written agreement of both parties hereto. * * * " In an effort to void the effect of this provision, appellant alleged, " * * * that if the Court be of the opinion that said memorandum does not clearly show the action of the parties in making a permanent contract for the remainder of the lives of the parties, that the provisions of said memorandum with respect to the duration of the contract are ambiguous and that such ambiguities as

may exist therein can and should be explained by extrinsic written and parol testimony, and that the true intention of the parties at the time of the execution of said contract was that the contract be a permanent contract and continue in full force and effect during the lives of the parties."

In the first place, we do not think the contract is ambiguous, as the language very explicitly states that it was to run indefinitely, that is, without a prescribed limit. In the absence of any restraining provision, either party had the right to terminate the contract at any time, and, furthermore, extrinsic evidence could not have been introduced to vary or contradict the plain, unambiguous terms employed.

Appellant also alleged that, prior to and at the time the contract was entered into, both parties understood it should continue throughout the "lives of the parties", unless changed by mutual consent, but that, due to a mutual mistake, and/or the fraudulent action of appellee, the contract failed to express the true agreement, therefore should be reformed. Appellant then alleged that, the mutual mistake, if any, arose by reason of the fact that neither he nor Mr. Woodall, general manager of appellee, who drew the contract, was an attorney, or skilled in the preparation of written instruments, nor did they have the benefit of legal advice in drafting the contract, and furthermore that the language used was ambiguous and inept to express the real meaning and intention of the parties with respect to the duration of the contract.

In substance, these are the allegations upon which the contention is based that the provision of the contract, with reference to its life, was entered as the result of a mutual mistake, hence failed to express the real intention of the parties, that is, that the contract should endure during the lives of the parties.

We do not think appellant's allegations were sufficient to raise the issue of a mutual mistake. The mistake alleged is predicated upon the idea that neither appellant nor the representative of appellee was an attorney, nor did they have the benefit of the counsel and advice of an attorney in drafting the instrument. This contention necessarily is based upon the incorrect assumption that attorneys alone possess sufficient knowledge of language and draftsmanship to prepare such an instrument. We think the contract in good form and bears evidence of having been written by

one possessing more than average knowledge and ability in regard to such matters; nor do we think the language employed either inept or ambiguous.

We have reached the conclusion that the court was justified in sustaining the general demurrer and dismissing the suit on either of the grounds heretofore discussed, therefore, affirm the judgment.

Affirmed.