**SLOAN v. MIAMI MARGARINE CO.**

No. 14453.

Court of Civil Appeals of Texas. Dallas.

Jan. 18, 1952.

Rehearing Denied Feb. 22, 1952.

Alexander, George, Russell, Johnson & Passman and Tom E. Bryan, all of Dallas, for appellant.

Storey, Sanders, Sherrill & Armstrong and R. G. Storey, Jr., all of Dallas, for appellee.

YOUNG, Justice.

Suit in the trial court was by Miami Margarine Company, an Ohio corporation, upon sworn account for packaged margarine sold to appellant Archie Sloan, d/b/a Texas Meat and Provision Company. Defendant interposed two motions to dismiss said cause; one, on the ground that appellee was doing business in the State of Texas without a permit; the second, asserting that the transaction sued upon arose out of an agreement between the parties in violation of the Anti-Trust Laws of Texas. Subject to these motions, defendant filed answer inclusive of sworn denial of account; also a counterclaim for damages, alleging a breach of his exclusive contract to handle plaintiff's margarine in Dallas and adjacent territory. By stipulation the motions were held in abeyance pending trial to the merits. Thereafter, both parties filing motions for judgment on the jury verdict, all motions of defendant were overruled with judgment rendered for plaintiff in amount sued for, and a consequent appeal. For convenience, the parties will be referred to as in the trial court, or by name.

Jury issues and answers were in substance that in August 1947, Miami Margarine Company agreed to sell its Nu-Maid margarine to Texas Meat and Provision Company exclusively in Dallas and adjacent territory; but did not require of defendant the sale of its product (Nu-Maid) exclusively to retail stores nor that Golden-Maid margarine be sold by defendant exclusively to cafes and cafeterias. No point is made by either side concerning sufficiency of evidence to support these findings. The balance of account sued on and unpaid was agreed upon as $3,254.06; in consideration of which defendant was permitted to open and close argument with respect to his defenses. Plaintiff, admittedly without permit contemplated by Art. 1529, Vernon's Ann.Civ.St., had been engaged in the outright sale of margarine in Texas since around 1939; its business procedure being generally to require that all orders taken by soliciting agents or otherwise be transmitted to the Home Office, Cincinnati, where, upon acceptance, the same would be filled and shipments made to designated Texas distributors or jobbers via truck and other common carriers. Thus far the interstate character of plaintiff's dealings is not questioned; defendant claiming however that in connection with his distributorship, plaintiff is engaged in transactions of purely local concern which in effect constitute the doing of business in Texas without a permit in violation of the cited statute.

These co-called domestic activities will be outlined briefly: Along with the selection of defendant as distributor in the Dallas territory, plaintiff Company agreed to pay salary and expense of a man to work along with Sloan and his salesmen on both wholesale and retail levels to the end of increased sales, which arrangement continued for several months. A system of advertising was agreed upon with particular reference to its Nu-Maid brand, and through the distributor, extending to retail stores handling plaintiff's products, with cost thereof to be borne equally by plaintiff and defendant. These dealings were initiated and carried on by Heidrich, plaintiff's vice president, and Coy, its Southern Supervisor, through personal conversations with defendant Sloan, effective only through confirmation at the Home Office. There were also several occasions for plaintiff Company to store quantities of its merchandise in public warehouses, explained by witnesses in this wise: That in one instance, by mistake, an oversupply was shipped to its Fort Worth jobber, and in two other cases the distributors had ceased handling the product, requiring a transfer of the returned merchandise to cold storage (being highly perishable) until later disposed of through orders of other distributors.

The following points of appeal will be summarized: (1) The court's error in overruling defendant's plea in abatement and motion to dismiss suit because of pleading and proof, (a) that defendant, a foreign corporation, was at all material dates transacting intrastate business without a permit and hence not entitled to sue in the courts of this State, (b) that plaintiff and defendant had entered into an agreement of exclusive distributorship in violation of the State Anti-Trust Laws, and the debt, being in consequence of such illegal agreement, was unenforceable; (2) error in refusal by the court to submit the special issues tendered under defendant's cross action, the proof establishing a violation by plaintiff of his exclusive contract to sell margarine as pled in Fourth Amended Answer and cross action. Appellant's points 4 and 5 (charging improper argument on part of plaintiff's counsel and error in refusal to admit certain testimony) must be disregarded because of disallowance of bill of exceptions by the court in the one instance; and as to point 5, defendant has failed to embody such matter of rejected evidence in amended motion for new trial, Rule 374, Texas Rules of Civil Procedure.

It will be observed that no jury issues were requested by defendant under his plea in abatement charging violation by plaintiff of Art. 1536, V.A.C.S., which prohibits the maintenance of suit by a foreign corporation based on intrastate transactions without having first obtained a permit. The trial court has overruled such plea with the result that the ruling must stand under the doctrine of implied findings which, in turn, have support in the record. Without general rehash of testimony incident thereto, there was no maintenance of a special office by Harris, employed by plaintiff as a "pusher" for defendant's sales of margarine, or a general office by Ezell, brokerage agent of plaintiff from July through December 1947, within meaning of the statute. Art. 1529. And the employment of Harris by defendant, but paid for by plaintiff to work in conjunction with local salesmen of Sloan to the end of increasing his margarine sales, is not tantamount to the transaction of intrastate business in any statutory sense. "Nor does the contract between the parties as above set forth and the attempted compliance therewith on the part of appellant alter the case. The coffee was first sold direct to appellees by appellant, *whereby it became the property of the former,* and the fact that appellant's agents did thereafter assist appellees' drummers in making sales thereof to their customers within this state did not render it subject to the statute invoked by appellees." (Emphasis ours.) Maury-Cole Co. v. Lockhart Grocery Co., Tex.Civ.App., 173 S.W. 262, 263.

With reference to the co-operative advertising, charged as transactions of intrastate business, the contracts were likewise between *defendant* and retail outlets, and though on forms suggested by plaintiff, the expense thereof was subject to approval and payment from the Cincinnati office and thereby of interstate character. Similarly so, as to plaintiff's temporary storage of merchandise in public warehouses—being viewed as matters ordinarily incident to interstate sales. The statute has no application where the activities in question are merely incidental to the interstate element of the transaction and essential to its completion. 20 C.J.S., Corporations, § 1840, page 58; York Mfg. Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963, reversing Tex.Civ.App., 172 S.W. 206.

Appellant argues that this voluminous record reflects divers violations of Arts. 7426, 7427 and 7428, V.A.C.S., Texas Anti-Trust Laws. However, we may properly consider only the infraction suggested by jury answer to issue No. 1 that plaintiff "agreed to sell Nu-Maid margarine to Texas Meat and Provision Company exclusively in Dallas and adjacent territory"; all other facts having been impliedly found by the court in favor of the judgment rendered. There was no agreement that defendant's sales, in turn, should be restricted to plaintiff's margarine products, it being undisputed that Sloan was handling simultaneously other competitive brands; also that plaintiff had many distributors outside of Dallas and its suburban district. Testimony in the same connection amply

warrants a finding that aforesaid exclusive agreement on part of plaintiff was consummated through its Home Office in Cincinnati; thereby reflecting an interstate transaction offensive, if at all, to the Federal Anti-Trust Laws, 15 U.S.C.A. § 1 et seq., as held by our Supreme Court in Albertype Co. v. Gust Feist Co., 102 Tex. 219, 114 S.W. 791, under facts quite similar. The principle stated in the Albertype case and applicable to the instant jury finding was emphasized in Segal v. McCall Co., 108 Tex. 55, 184 S.W. 188, 190, where the Court went on to say: "* * * that the restraint of trade which appeared from the facts to exist in that case was not prohibited by the Texas Anti-Trust Act, it having relation alone to interstate commerce. As governed by the facts of that particular case, the holding was correct. The provision of the contract in that case, which was charged to be in violation of the state Anti-Trust Act, was, that the Albertype Company, of the state of New York, would not sell the souvenir albums to any citizen of the city of Galveston other than the Gust Feist Company, whose place of business was in Galveston. For the Albertype Company, of the state of New York, to sell and deliver the albums to a citizen of Galveston, Tex., was interstate commerce. For it to refrain from so doing was to refrain only from engaging, to that extent, in interstate commerce. This would be in violation of only the federal Anti-Trust Act. If the contract had required the vendee, after receiving it in Texas, to sell it at a certain price, or to refrain from selling any other kind of album, then such provision of the contract would have been in violation of the Texas Anti-Trust Act, because having relation to certain restricted uses of the property after the interstate shipment had been completed." The quoted holding furnishes a complete answer to any contention of unenforceability of contract due to violation of Texas Anti-Trust Laws.

Appellant's third point—refusal to submit issues raised under his cross action—must be considered in view of these attendant facts: It seems to be conceded that at close of testimony, all parties including the court were of the opinion that a finding of exclusive contract (Issue No. 1) would be controlling of the entire case and favorable to defendant; and, relying upon an understanding to such effect, defendant's counsel did not request issues on his cross action; that thereafter, and despite a favorable answer to issue No. 1, judgment was entered on the entire case for plaintiff, for which reason defendant has suffered material injury, in that he has been deprived of a hearing or jury findings on the merits of aforesaid counter suit. Paragraph 3 of defendant's cross action charges a wrongful breach of his exclusive contract with plaintiff for handling its margarine products: In substance that, unknown to him, plaintiff on November 1, 1948 transferred such exclusive distributorship to George A. Hormel & Company along with advertising benefits and promotional services in aid of the Hormel account; that thereafter plaintiff's salesmen sold to defendant a large bill of goods (the balance of account now sued on), not notifying him until November 22 that his jobber's contract with Miami Margarine would terminate December 1, following. Under other allegations defendant claimed damages at $12,800 in being deprived of a margarine market and profits, and, in particular, of having been forced to sell at least 6,000 lbs. of the product at a substantial loss. In this connection the court's judgment denied generally any recovery on defendant's cross action, with issues later tendered thereon marked "Refused."

A sales contract such as we have here, being of indefinite duration, is of course subject to termination at any time. Byrd v. Crazy Water Co., Tex.Civ.App., 140 S.W.2d 334. It may be, however, that there are actionable features arising from plaintiff's alleged secret shift of distributorship during November 1948 prior to its notice to defendant November 22 canceling his exclusive connection as of December 1. Concerning the merits of such cross action, we express no opinion, it being presently a matter for determination by the trial court. Error, if any, having reference only to this part of the controversy, and such claim be-

ing obviously severable, the cause will be reversed for trial of cross action under Rule 434, Texas Civil Procedure. In all other respects the judgment under review will be affirmed.

Affirmed.

## On Rehearing.

Appellant calls attention to some inaccuracies of fact apparent in original opinion which will be corrected; not affecting however the conclusions of law there stated. While Heidrich, vice president of Miami, on a trip to Dallas in November 1947, confirmed Sloan's exclusive distributorship as made by Coy in August previously, we took from appellant's brief the further statement that said initial agreement was "subject to approval by the Home Office"; see also statement of facts, p. 88. Our reference to Harris as a "pusher" in promotion of defendant's sales is withdrawn. Another party was employed in this capacity; said Harris merely living on Vickery Boulevard, Dallas, while working for Miami, where he received and answered all correspondence. We are cited to no record basis for appellant's assertion that the Company "always sent fully loaded trucks of merchandise to Texas, whether a full load had been ordered or not."

Appellee, in turn, strenuously complains of our reversal of cause in so far as same relates to defendant's cross action. In course of plaintiff's objections to these requested issues, it was admitted that there was only a verbal discussion thereof and "that by agreement of all parties and with approval of the court, it has been agreed and is not denied by the plaintiff that defendant might submit issues as he alleged in paragraph 2 of said first amended motion for new trial with reference to the breach of 'such agreement and damages,' viz., the alleged agreement on 'August 1947' * *." In the same connection we express no opinion as to sufficiency of these issues, either in form, substance, or materiality; such being a matter for determination by the trial court on due hearing of such cross action. The motions for rehearing filed by respective parties are in all respects overruled.