## Fuqua, Hinkle & Davis v. Pabst Brewing Company.

Decided January 12, 1897.

1. **Assignment of Error—Reasons Disregarded.**

It is the settled practice to disregard the reasons given in an assignment of error, and to treat the same as if such reasons had been omitted. (P. 301.)

2. **Same—Trusts—Fundamental Error.**

Where a contract is declared void by the law against trusts, it is the duty of the Appellate Court, although the point is not raised by an assignment of error, to set aside the judgment rendered thereon, as its rendition was an error in law, apparent on the face of the record. (P. 301.)

3. **Trusts—Void Contract.**

An agreement between a brewing company and a dealer in this State for the furnishing a storage house, and for sale of beer by the former to the latter, providing that, during its continuance, the company would not sell any beer of its. manufacture to any other party in the city of the dealer's residence or its vicinity, and that the dealer would not sell any beer not manufactured by the company, was a combination of capital and acts, the tendency and purpose of which was. to "create and carry out restrictions in trade," and "to prevent competition in sale or purchase of commodities," which created a trust such as is prohibited by Rev. Stats., art. 5313. (T. & P. Coal Co. v. Lawson, 89 Texas, 394; Texas Brewing Co. v. Templeman, 90 Texas, 277.) (P. 301.)

4. **Same—Inter-State Commerce.**

The beer being manufactured in another State, such transaction, so far as it provided for the sale and purchase of beer, to be transported from Wisconsin to Texas and there delivered to the dealer, was interstate commerce, and not subject to State regulation without the consent of Congress; nor was it regulated nor prohibited by the statute; but so far as the contract so dealt with the subject, after it had ceased to be an article of interstate commerce, as to create a trust, as above shown, it was in violation of the statute, and, a portion of the contract being void, the taint of illegality affected and destroyed in the whole. (P. 302.)

5. **Same.**

The trust created by the contract was not exempted from the operation of the statute, as being a regulation of interstate commerce, for the further reason that such commerce in intoxicating liquors is, by the Act of Congress (26 Stats. 313, c. 728; In re Rahrer, 140 U. S., 545), made subject to the operation and effect of the police powers of the State. (Pp. 302, 303.)

ON MOTION FOR RE-HEARING.

6. **Supreme Court—Jurisdiction—Amount.**

A suit against a principal debtor for $1164.48, and against his sureties, whose guaranty was limited to $1000, was not such action as could be brought in the County Court, and the Supreme Court has jurisdiction in such case on writ of error sued out by the sureties alone. (P. 303.)

ERROR to Court of Civil Appeals, Third District, in an appeal from Potter County. The suit was brought by the Pabst Brewing Company against Kingsbury, and other defendants who were sureties to guaranty the performance of his contract with the company. Plaintiff recovered judgment. The sureties only appealed, and on affirmance of the judgment, obtained writ of error.

*Geo. E. Holland,* for plaintiffs in error.—The Court of Civil Appeals erred in refusing to hold the contract sued on in this case void, as being in conflict with the Act of 1889 concerning trusts and conspiracies against trade. T. & P. Coal Co. v. Lawson (34 S. W. Rep., 919); 89 Texas, 394; Brewing Association v. Houck, 27 S. W. Rep., 692.

*Browning & Madden,* for defendant in error.—This court is without power to hear and determine the question of law sought to be raised because raised for the first time in the Court of Civil Appeals on motion for rehearing. Const. art. 5, sec. 3; Rev. Stats. arts. 940, 1018; Rules for Court of Civ. App., nos. 23, 24, 25, 26, 29; Schintz v. Morris, 35 S. W. Rep., 1041; Darnell v. Lyon, 85 Texas, 455, dissenting opinion; Railway v. Cooper, 85 Texas, 431.

The contract and bond sued upon are valid and binding obligations in law. On the question as to what laws govern in determining the validity of the contract,—Gautier v. Franklin, 1 Texas, 736; Hays v. Cage, 2 Texas, 505; Andrews v. Hoxie, 5 Texas, 187; Railway v. Harris, 1 White & W. App. C. sec. 1265; Ryan v. Railway, 65 Texas, 16; 3 Am. & Eng. Encycl. Law, 542-555. On the question as to the inter-state commerce character of the contract,—Constitution of U. S. art. 1, sec. 8; Bateman Bros. v. Western Star Milling Co., 1 Texas Civ. App., 90; Reed & Barton v. Walker, 2 Texas Civ. App., 92; Lyon-Thomas Hardware Co. v. Reading Hardware Co., 21 S. W. Rep., 300; American Starch Co. v. Bateman, 22 S. W. Rep., 771; Robbins v. Taxing Dist., 120 U. S., 489; opinion of Justices Mathews and Blatchford, in Mfg Co. v. Ferguson, 113 U. S., 736; Crutcher v. Kentucky, 141 U. S., 47-62; Singer Mfg. Co. v. Hardee, 16 Pac. Rep., 605; Ware v. Shoe Co., 9 So. Rep., 136; 11 Am. & Eng. Encycl. Law., 544, 548, 549.

DENMAN, ASSOCIATE JUSTICE.—On the 26th day of August, 1892, Pabst Brewing Company, a corporation duly incorporated under the laws of Wisconsin, doing business in the City of Milwaukee, entered into a written contract with C. P. Kingsbury, of Amarillo, Texas, whereby the former agreed to sell to the latter such beer, of the quality manufactured by said corporation, as he might purchase under the agreement during its continuance, at specified prices, which prices included the freight on the beer from Milwaukee to Amarillo as well as on the empty cooperage to be returned under the terms of the contract from Amarillo to Milwaukee, and agreed to allow said Kingsbury a running credit on such sales to at least the amount of $1000, which credit was to expire upon the termina-

tion of the agreement or upon 30 days demand for the balance due, and
Kingsbury to reship to said company, as soon as empty, all kegs and
packages in which the beer was received, and also all empty bottles, for
which bottles the company was to give Kingsbury credit at specified
prices as received from time to time at Milwaukee; and for all beer pur-
chased by Kingsbury under said contract in excess of said credit he
agreed to pay cash, at the specified rates at the time of sending his order.
Said contract concludes with the following language—"and in considera-
tion of this agreement said company agrees that, during the perform-
ance of the contract, it will not sell or consign any beer of its manufacture
to any other party within the City of Amarillo, Texas, or its vicinity, and
said Kingsbury agrees that, during the continuance of this agreement, he
will neither sell nor be interested in the sale of any beer not manufac
tured by the Pabst Brewing Company. The Pabst Brewing Company
hereby further agree to erect a cold storage house, and allow to Kingsbury
the free use of same during the continuation of this agreement.   *   *   *
*   This agreement may be terminated by either party upon ten days'
notice to the other in writing." W. H. Fuqua, T. B. Hinkle, T. S. Mul-
lins and Walter Davis, at the date of the execution of said contract,
signed a memorandum endorsed thereon whereby they jointly and sev-
erally guaranteed to said Brewing Company the faithful performance of
said contract by said Kingsbury, their liability not to exceed $1000.

This is a suit brought upon said memorandum of guaranty against said
guarantors by said Brewing Company. The petition alleged the terms
of the contract and guaranty above set out making the same an exhibit;
the same were executed and delivered to the company's agent at Amar-
illo, Texas, where Kingsbury then resided, and were then and there by
such agent accepted and forwarded to the company at Milwaukee, where
the company's president signed same; that afterwards, on divers specified
dates, extending from the date of the contract to the 23rd day of June,
1893, as shown by the attached account, said company, at the instance
and request of Kingsbury and in pursuance of said agreement, sold and
delivered to him various quantities of beer therein specified, amounting
in all to $4546.34, as shown by account attached, upon which account
said Kingsbury paid the sum of $3381.86, leaving due and unpaid $1164.-
48; that on or about the first day of July, 1893, said contract was termin-
ated by the company, and payment demanded of said balance, according
to the terms of said contract; that said Kingsbury had failed to pay said
balance, wherefore suit was brought upon said guaranty against said
guarantors.

The District Court having rendered judgment against defendants on
said guaranty for the balance due upon said account, they appealed to the
Court of Civil Appeals, which court having affirmed the judgment, they
have brought the case to this court by writ of error, making among others
the following assignments of error:

"First:   They say the Court of Civil Appeals erred in holding the trial
court correctly overruled the general demurrer to plaintiff's petition urged

by defendants, on the ground that said petition failed to show that any goods mentioned in the contract sued on had ever been sold."

"Fifth:   They say the Court of Civil Appeals erred in refusing to hold the contract sued on in this case void, as being in conflict with the Act of 1889 concerning trusts and conspiracies against trade."

The first of these assignments was duly made in the Court of Civil Appeals and overruled by said court, but the second question was not, in terms, raised in said court until on motion for rehearing.   The company objects to the consideration by this court of the question of the legality of the contract under the trust statute, for the reason that it was not presented to the Court of Civil Appeals.   We are of opinion that this objection is not well taken, (1) because the general demurrer urged in the trial court necessarily raised the question of the validity of the contract sued on, it being the settled practice to disregard the reasons given in an assignment and to treat the same as if such reasons had been omitted; and (2) because if the contract be controlled by and is violative of said statute, the same is thereby declared to be void, (T. & P. Coal Co. v. Lawson, 89 Texas,—) and it was the duty of the Court of Civil Appeals, notwithstanding the absence of an assignment, to set aside the judgment rendered thereon, as its rendition was "an error in law   *   *   apparent on the face of the record."   Rev. Stats., article 1014.

This brings us to the question as to whether the contract evidences a trust within the meaning of said statute.   The contract declared upon was for the sale of beer by the company to Kingsbury and not the establishment of an agency.   When any shipment thereunder was delivered to Kingsbury at Amarillo the title to the beer vested in him under the terms of the contract, but the "cooperage," i. e., the "kegs and packages," in which the same was received, remained the property of the company and was to be reshipped to them as soon as empty, the contract contemplating that Kingsbury was to have the use thereof while the beer was being retailed by him at Amarillo.   The contract contemplated and provided for the union or association of the capital and acts of each party in furtherance of the business scheme outlined therein during its continuance.   This was a "combination" of "capital" and "acts."   The tendency and purpose of such combination was clearly, (1) "to create and carry out restrictions in trade," and (2) "to prevent competition in sale or purchase of commodities," in that it restricted the company's right to sell beer of its manufacture in Amarillo to such sales as it might be able to make to Kingsbury under the agreement and prohibited him from selling any other beer and therefore tended to prevent any other vendor of beer coming into competition with plaintiff in selling to Kingsbury. This created a "trust" within the meaning of the statute under the authority of T. & P. Coal Co. v. Lawson, (34 S. W., 919) 89 Texas, 394, and Texas Brewing Co. v. Templeman, recently decided by this court but not reported, and therefore the contract or agreement is, in the language of the statute, "absolutely void and not enforceable either in law or equity" and the general demurrer urged to the petition based thereon

should have been sustained, unless the contract is exempted from the operation of the statute by that provision of the Constitution of the United States conferring upon Congress power "to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

In the celebrated "Original Package Case" of Leisy v. Hardin, 135 U. S., 100, the Supreme Court of the United States held that beer, imported by a resident of one State into another for sale, retained its character as an article of interstate commerce, exempt from regulation by the statutes of such other State, until disposed of by such non-resident importer in such other State in the original packages in which it was imported. As we understand this and other decisions of that learned court, such articles lose such character and exemption and so "become part of the common mass of property within a State as to be subject to its unimpeded control," when so disposed of by such non-resident importer or when offered for sale by him in broken packages or by retail. It is clear then that when any shipment of beer was delivered under the contract by the company to Kingsbury at Amarillo, the title thereby vesting in him as we have seen above, the same ceased to be an article of interstate commerce, and in so far as the contract dealt with it thereafter, it was not a contract with reference to an article of interstate commerce and the clause of the Constitution above quoted does not prevent said statute from invalidating same. The case then comes to this: The parties contracted for the sale and purchase of beer to be transported from Milwaukee to Amarillo to be there delivered to Kingsbury and become his property. So far the transaction was interstate commerce and not subject to State regulation without the consent of Congress, nor did the statute undertake in any way to regulate or prohibit same. But the parties by the same contract voluntarily went further and so dealt with the subject, after it had ceased to be an article of interstate commerce, as to create a "trust," as above shown, in violation of the statute. A portion of the stipulations of the contract being lawful and the others unlawful, the taint of illegality affects and destroys the whole. (Edwards County v. Jennings, [35 S. W., 1053], 89 Texas, 618.) The commerce clause of the Constitution was not designed to protect the contractual rights of a person who thus voluntarily intermingles an otherwise legal interstate commerce transaction with an entirely local and unlawful one. We are therefore of the opinion that independent of Congressional action the contract sued upon was void.

There seems to be another valid reason why the trust created by this contract is not exempted from the operation of the statute by said constitutional provision, and that is that Congress seems to have removed any impediment afforded by such provision to the operation of the statute upon this transaction by the passage, Aug. 8, 1890, of the following statute:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That all fermented, dis-

tilled, or other intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such State or Territory be subject to the operation and effect of the laws of such State or Territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." (26 Stat., 313, c. 728; In Re Rahrer, 140 U. S., 545.) While this act was immediately intended to remedy the difficulty resulting from the decision of the "Original Package Case" above, still it seems broad enough to apply to this transaction, by subjecting the beer to the operation of the State statute immediately upon its arrival in the State instead of when sold by the importer as was held in said case.

Since the contract of the principals was illegal and void the guaranty must fall with it and the general demurrer should have been sustained.

For the error of the trial court and Court of Civil Appeals in overruling same their judgments will be reversed as to plaintiffs in error and judgment here rendered that plaintiff below take nothing by its suit against them and pay all costs.

*Reversed and rendered.*

Opinion delivered December 14, 1896.

*Browning & Madden*, for defendant in error, moved for a rehearing on the ground that the validity of the contract was to be determined by the laws of Wisconsin, the place where it was made. In support of this contention they cited and discussed Gautier v. Franklin, 1 Texas, 736; Hays v. Cage, 2 Texas, 505; Andrews v. Hoxie, 5 Texas, 187; Cantu v. Bennett, 39 Texas, 309; Railway v. Harris, 1 White & W. App. C., sec. 1265; Railway v. Davis, 2 Willson's App. C., sec. 191; 3 Am. & Eng. Encycl. Law, 547, 552; Scheuenfeldt v. Junkerman, 20 Fed. Rep., 357.

Also that the Supreme Court was without jurisdiction, the liability of the plaintiffs in error upon the bond sued on being limited to $1000. Rev. Stats., arts. 996, 1155; Railway v. Buford, 21 S. W. Rep., 678.

## ON MOTION FOR RE-HEARING.

DENMAN, ASSOCIATE JUSTICE.—In the original opinion we stated only such facts from the record as we deemed pertinent to the questions of law presented by plaintiffs in error, the sureties on Kingsbury's bond. Defendant in error on motion for rehearing for the first time questions the jurisdiction of this court. It therefore becomes proper, as an answer thereto, to state that the suit was against the principal Kingsbury for the $1164.48 balance alleged to be due on sales under the contract and also against the sureties on the bond for $1000 thereof.

The motion will be overruled.

*Motion overruled.*