### CADDELL et al. v. J. R. WATKINS MEDICAL CO. (No. 6458.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 5, 1921. Rehearing Denied Jan. 26, 1921.)

**1. Commerce ⬤═40(1)—Permit not necessary to carry on interstate commerce.**

Where product was manufactured in another state and shipped to the purchaser in the state, the transaction was interstate commerce, and the manufacturer and seller was not required to obtain a permit in order to lawfully carry on such commerce.

**2. Corporations ⬤═642(4½)—Foreign corporation, maintaining agent for collection and adjustment of accounts, not doing business in state.**

A foreign corporation, manufacturing articles and shipping them to purchasers in Texas, was not doing business within the state by reason of its having an agent in the state who collected and adjusted accounts, and could maintain an action without procuring a permit.

**3. Monopolies ⬤═17(1)—Contract of absolute sale limiting resale invalid.**

If a contract under which absolute sales of goods are made limits resale of the product to prescribed territory, or to fixed price, or the retailer is required to devote all his time to the sale of such particular goods, and may not engage in any other business, it is invalid, and not enforceable in the courts.

**4. Monopolies ⬤═17(1)—Contract of sale held invalid.**

A contract of sale of goods, limiting territory within which resale might be had and requiring purchaser or retailer to devote all his time thereto, *held* invalid and not enforceable.

**5. Evidence ⬤═437—Parol evidence rule not indulged so as to foster practices abhorrent to public policy.**

A strained technical adherence to the rule that an instrument must not be varied or contradicted by parol should not be indulged so as to foster parol practices abhorrent to the

---

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

statutes and public policy; and, even if a main contract of sale was lawful in its terms, but through letters and circulars one of the parties modified or enlarged the effect or provisions of the original instrument so as to make its purposes unlawful under the anti-trust statute, and the other party acquiesced in or was coerced into an acceptance of these changes and both parties construed and acted upon the contract as so modified, such parol evidence rule will not prevent introduction in evidence of such circulars and letters to uncover the unlawful acts rendering the contract invalid.

**6. Commerce &#9758;40(I)—Agreement as to resale of goods shipped in interstate commerce not influenced by federal law.**

Where goods were sold in interstate commerce, the moment they passed into the possession of the purchaser such goods and the handling of them and all contracts and agreements concerning their sale or disposition from that time passed out of the influence of the federal law and into the control of the state law, and the anti-trust statutes would apply to such resale agreements.

**7. Appeal and error &#9758;719(6)—Fundamental error in overruling motion for directed verdict considered, though not assigned as error.**

Appellate court may take cognizance of fundamental error in overruling defendant's motion for a peremptory instruction in an action on an invalid contract, although there was no assignment of the invalidity of the contract as a reason for granting a peremptory instruction.

Appeal from District Court, Guadalupe County; M. Kennon, Judge.

Suit by the J. R. Watkins Medical Company against C. J. Caddell and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Greenwood & Short and Dibrell & Mosheim, all of Seguin, for appellants.

John Charles Harris, of Houston, Tawney, Smith & Tawney, of Winona, Minn., Harris & Harris, of Houston, and Wurzbach & Wirtz, of Seguin, for appellee.

SMITH, J. The J. R. Watkins Medical Company, a Minnesota corporation, brought this suit against Caddell, as principal, and Cowey, Duke, and Batey, all of Guadalupe county, Tex., as sureties or guarantors, to recover a balance due on a running account incurred under the provisions of a written contract. This contract, according to the initial recitation therein, was "made" in Winona, Minn., the domicile of the company. By its provisions the company agreed to sell and deliver to Caddell, free on board the cars at Winona, at the current wholesale prices, any and all its products which Caddell might "reasonably require for sale by him" during the life of the contract, according to its provisions, "in the following described territory,

to wit: In the state of Texas, in Guadalupe county, the S. half." Caddell was obligated, upon receiving the goods, to make a thorough personal canvass of this territory at least three times a year, for which purpose he agreed at his expense to provide his own team and outfit, to sell as much of the goods as possible, to keep a complete record of all goods disposed of and on hand, and to make the company complete, regular weekly reports of all sales and collections; to pay the company, at Winona, Minn., for the goods sold by him during the period of the contract, and to pay for or to return to the company, free on board the cars at Winona, all goods left on his hands unsold at the end of that period, for which he was to be paid or credited by the company at the original wholesale prices charged therefor; to pay all transportation charges and all other expenses incurred in the resale of the goods; to have no authority to bind the company for any purpose by his acts or utterances. It was stipulated that the company should share in neither his profits nor losses, nor have any interest in his accounts due for the goods, and that either party could terminate the contract at any time upon written notice, in which event there must be a prompt settlement of the account. It was also stipulated that the company had the right at any time to limit or discontinue the supply of its products to Caddell if his sales and remittances were not satisfactory to the company.

Appended to this contract was an agreement executed by appellants Cowey, Duke, and Batey, in which they waived notice of acceptance thereof by the company, and "promised and guaranteed" the payment of all indebtedness for the products obtained from the company under the contract.

The defendants opposed recovery on the grounds: (1) That the transaction was in contravention of the Texas anti-trust statutes, because under the contract, supplemented by the letters and instructions the plaintiff sent Caddell, who was governed thereby, Caddell was required to confine the sale of plaintiff's products to the south half of Guadalupe county; to sell them at a retail price fixed by the company, and to devote all his time to this project, to the exclusion of other employment; (2) that the plaintiff was a foreign corporation doing business in the state of Texas, without having procured a permit for that purpose, and therefore was not entitled to prosecute this suit in the courts of this state.

The case was tried before a jury, but at the close of the testimony the trial judge peremptorily instructed the jury to bring in a verdict for plaintiff for the amount sued for, which was done, and upon this verdict there was judgment for plaintiff jointly against all the defendants for $671.52, with interest, and defendants appeal.

The two main questions in the case are: First, was appellee engaged in business in this state in such manner as to require it to secure from the state a permit to do such business? and, second, was the transaction upon which the suit is based in contravention of the anti-trust statutes of this state?

[1, 2] 1. The facts show that appellee, a foreign corporation, manufactured its product in Minnnesota, the state of its domicile, and sold this product to appellant Caddell, a citizen of this state. The sale was made by appellee delivering the goods free on board the cars at shipping point, at which point also they were to be settled for by appellant, who paid all transportation charges; the result, so far as it concerns this question, would have been the same, however, if delivery had been made at destination, the goods paid for there, and the consignee had paid the freight. The point is that the product was manufactured in one state and sold and shipped to the purchaser in another state. These facts invest the transaction with the character of interstate commerce, and the manufacturer and seller is not required to obtain from the state of Texas a permit in order to lawfully carry on such commerce with the citizens of Texas. It is urged by appellants in this connection that appellee had an agent residing and having an office in Texas who collected and adjusted accounts such as the one involved, and that this constituted the doing of business in Texas, requiring appellee to take out a permit for that purpose. But the same principle, which enables appellee under these conditions to sell its products to citizens of this state without procuring the permit enables it to maintain an office and agent here for the purpose of collecting its accounts so incurred. So can appellee come into our courts and collect these accounts by suit, without first taking out a permit to do business in the state. These matters are very thoroughly settled by the decisions, and we overrule the second and eleventh assignments of error, raising these questions. Watkins Co. v. Johnson, 162 S. W. 394; Koch Co. v. Malone, 163 S. W. 662; Watkins Co. v. Holloway, 182 Mo. App. 140, 168 S. W. 290; Crisp v. Brewing Co., 212 S. W. 531; Denman v. Kaplan, 205 S. W. 739; Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Crisp v. Christian Moerlein Co., 212 S. W. 531.

[3, 4] 2. It being true that the sale of appellee's products to appellants was absolute, and that title thereto passed to appellants, the law will look with suspicion upon any contract by which appellee may control or restrict the resale of its products in Texas by appellants. If by the force of this contract and the control given thereunder the resale of the product in this state is limited to any prescribed territory, or to a fixed price, or the retailer is required to devote all his time to the sale of these particular goods and may not engage in any other business,

then we say such contract is invalid, and must not be enforced by the courts of the state. And while it may be true, as appellee urges, that, when tested alone by the cold letter of its terms, the contract in this case does not offend in the particulars named, it is nevertheless true, we believe, that it does so offend when it is considered and construed in connection with the contemporaneous utterances and conduct of the parties and their own construction of its terms, and the things actually accomplished thereunder. We must look at the whole transaction, rather than take a narrow technical view which embraces alone the strict letter of the instrument itself.

Prior to, at the time of, and subsequent to, the execution of the contract, appellee undertook by written instructions in the way of letters and circulars to direct appellant Caddell as to how and in what manner he should perform the obligations imposed upon him in the contract, and to determine what these obligations were. In that way appellee placed its own construction upon the contract and its provisions, and, we may add, thereby assumed as its own the vices growing out of this construction, and the operations of the parties thereunder.

It is obvious that the designation in the contract of the south half of Guadalupe county as Caddell's territory was not made for the mere purpose of enabling the company to estimate the quantity of its products it would be required to manufacture during the life of the contract, as appellee contends in its brief. On the face of the provision it seems that it was intended rather to limit Caddell's activities to the designated territory, although not expressly so stated; and in the various letters to Caddell the territorial designation was so stressed by the company that this purpose was made obvious, and Caddell conformed to it, thereby effectuating it. Again, the contract was silent upon the question of retail prices at which Caddell was to sell the company's products; but the record discloses that along with the contract the company furnished Caddell with a list of retail prices of all articles sold him at wholesale, and in some of its letters to Caddell referred to these retail prices as if they were to control, and as a matter of fact Caddell was fully governed by them. And again, the contract did not expressly require Caddell to devote all of his time to the resale of the goods bought of the company; it simply on its face required him to make a thorough canvass of his territory at least three times a year. But as soon as Caddell equipped himself and laid in a supply of the goods the company began insisting upon his putting in more and more of his time in the sale of these goods, and was soon requiring him to devote five or six days of each week steadily to the work.

Under the terms of the contract the com-

pany had the power at its pleasure to limit or discontinue the supply of its products to Caddell, and to actually terminate the contract as a whole at any time it saw fit to do so, thereby maturing all of Caddell's obligations to the company. As Caddell had been required under the terms of the contract to purchase a wagon and complete outfit, and incur all the other expenses incident to getting into the Watkins business, and in no event had any recourse upon the company for this outlay, it is easily conceivable that he could not resist any construction placed by the company upon the contract. The result was that he confined his sales to the territory allotted to him and to the retail prices fixed by the company, and, being required to devote all his time to this venture, was precluded from engaging in any other business or selling the product of any other concern. Accordingly, the company was enabled to construe the contract, and under its provisions to enforce its own construction thereof, and in this way put in effect a contract, the practical operation of which was clearly obnoxious to the anti-trust statutes in the particulars described.

[5] Appellee strenuously objects to any consideration by the courts of the letters and circulars it sent Caddell for his guidance in carrying on the business in hand, contending that to do so is in contravention of the rule that the terms of a written instrument must not be varied or contradicted by parol agreements. We readily agree that this rule supports a wise and just principle which must not be upset if we are to efficiently preserve established property rights. But a strained technical adherence to the letter of the rule should not be so indulged as to foster practices abhorrent to the statutes and public policy of this state. Even if the main contract in this transaction was lawful in its terms, but through letters and circulars one of the parties modified or enlarged the effect or provisions of the original instrument, so as to make its purposes unlawful, and the other party acquiesced in or was coerced into an acceptance of these changes, and both parties construed and acted upon the contract as so modified, shall our courts lend their power to the enforcement of such a contract in derogation of the law of the land? We do not think we do violence to the rule appellee invokes when we give effect to the modifications of and construction placed by appellee itself upon the original contract. In testing the validity of contracts of this sort with reference to the application thereto of anti-trust statutes, we must look, not only to the contract itself, but as well to what was done under the contract. Certainly, in order to ascertain what was done under the contract in this case, we must consider the instrument itself, the construction the parties thereto placed upon its provisions, and the things they accomplished thereunder.

When we have done that in this case, we uncover unlawful acts rendering the contract invalid and therefore unenforceable. We are not without authority to support this conclusion. State v. Willys-Overland, 211 S. W. 609; Newby v. Rawleigh Med. Co., 194 S. W. 1173; Whisenant v. Shores-Mueller Co., 194 S. W. 1175; Armstrong v. Rawleigh Med. Co., 178 S. W. 582; Texas Brewing Co. v. Templeman, 90 Tex. 277, 38 S. W. 27.

[6] Appellee insists, too, that the matters involved in this suit constituted interstate commerce, and that therefore the Texas antitrust statutes must not be applied. Numerous decisions of the appellate courts of Texas, of which Fuqua v. Pabst Brew. Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241, may be said to be the leading case, have clearly marked the difference between what is, and what is not, interstate commerce as applied to transactions of this character. Under these decisions the goods in controversy were invested with the character of interstate commerce, and were under the protection or influence of the federal law, until they were actually delivered to Caddell at Seguin. The handling of the goods up to that time, and all agreements relating thereto, were under the control of the federal law, and without the reach of the state law. But the moment they passed into the possession of Caddell at Seguin, these goods, and the handling of them, and all contracts and agreements concerning their sale or disposition from that time on, passed out of the influence of the federal law, and into the control of the state law. And if under the agreement of the parties Caddell was obligated, as we have held, to confine this resale of the goods already delivered to him to the prescribed territory, or to resell them at a fixed retail price, or to devote all his activities to their sale to the exclusion of all other affairs, then such agreement—relating as it does to a product which has already been sold and delivered to a consignee in this state, and has become mixed with the common mass of property and is atgest in this state, and has accordingly lost its interstate character—is in contravention of our anti-trust statutes, and therefore invalid.

[7] Appellant Caddell filed in the trial court a motion for peremptory instruction to the jury to return a verdict in his favor, upon the ground (among others) that the contract in question was in violation of the anti-trust laws of the state, but did not in his motion for new trial or in his brief assign error upon this specific ground, although complaint is made in his eighth assignment of error as the action of the trial court in refusing to give a peremptory instruction upon the ground that the contract in question showed appellee to be doing business in Texas without a necessary permit therefor. The action of the trial court in overruling defendant's motion for a peremptory instruction was fun-

damental error, not for the reason assigned by appellants in their brief, but for the reason that the transaction upon which appellee based its suit was unlawful. We have therefore taken cognizance of this error, even though not properly assigned, and have decided, in view of the conclusions reached, to sustain the eighth assignment of error and to reverse the judgment of the trial court, and here render judgment in favor of appellants.

In view of this disposition of the case, all assignments of error not specifically mentioned become immaterial, and will not be discussed.

Reversed and rendered.