### J. R. WATKINS CO. v. MYERS et al.
### (No. 8877.)

(Court of Civil Appeals of Texas. Dallas. Oct. 27, 1923. Rehearing Denied Nov. 30, 1923.)

**1. Appeal and error ⊜⇒882(3)—Putting contract in evidence waives error in permitting adversary to introduce part of contract.**

In action on a sales contract of 1918, where issues were raised as to illegality of the contract as being in violation of the anti-trust statute, any error in admitting evidence of part of a contract of 1912 as bearing on such issue was waived by plaintiffs reading in evidence the contract of 1912.

**2. Monopolies ⊜⇒21—Books, letters, etc,, admitted to show interpretation of sales contract.**

In action on a sales contract, where the issues raised by defendant were as to its illegality, 'as violative of the anti-trust statute, evidence of books, communications, papers, and letters from seller was admissible to show construction of the contract by seller, and that in performance buyer accepted seller's interpretation.

**3. Trial ⊜⇒84(1)—Secondary evidence to show interpretation of contract held admissible, where proper objection not made.**

In action on a sales contract, where the issues raised were as to its invalidity as violative of the anti-trust statute, in the absence of objection to admission of evidence of books, communications, papers, and letters from seller to buyer on the ground that proper predicate for secondary evidence had not been laid, the books, etc., were properly admitted to show interpretation of the contract which showed an attempt to circumvent the law.

**4. Monopolies ⊜⇒21—Publication by seller held admissible to show interpretation of sales contract.**

In an action on a sales contract, where the issues raised by defendant were as to its illegality, as violative of the anti-trust statute, evidence of a book published by seller, though published prior to the contract sued on, was admissible. to "show construction of the contract by seller, and that in performance thereof buyer accepted seller's interpretation.

**5. Appeal and error ⊜⇒1054(1)—Error in admitting evidence not reversible, in view of other evidence.**

Where, in action on a sales contract in which the issue was as to its illegality, as violating the anti-trust statute, and trial was had before the court, permitting defendant to read a letter from plaintiff to another agent relative to having addressee confine his sales to his own allotted territory was error, but not reversible, in view of other ample evidence to justify judgment rendered.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Appeal and error ⬡⟿934(2)—Presumed that judgment based on evidence where special findings of fact absent.**

In the absence of special findings of fact, it must be assumed that the trial court based its judgment on evidence properly before it.

**7. Monopolies ⬡⟿17(2)—Sales agreement held void under anti-trust laws.**

A sales agreement that the buyer should sell seller's goods only within a certain territory *held* to create and carry out restrictions in free pursuit of business of selling the merchandise so purchased and to lessen competition in the sale and purchase thereof and to be void under anti-trust laws (Acts 28th Leg. [1903] c 94, §§ 1–3).

Appeal from District Court, Collin County; F. E. Wilcox, Judge.

Action by the J. R. Watkins Company against Oscar Myers and others. Judgment for defendants and plaintiff appeals. Affirmed.

Truett & Neathery, of McKinney, for appellant.

Marvin P. McCoy, of Greenville, for appellees.

VAUGHAN, J. Appellant, the J. W. Watkins Company, a Minnesota corporation, as plaintiff in the court below, sued appellees Oscar Myers, Chas. Myers, and J. I. Myers, defendants in the court below, upon a contract entered into between appellant and appellees on the 2d day of December, 1918. Appellant alleged in its petition that on or about the 2d day of December, 1918, appellant and appellee Oscar Myers entered into an agreement in writing whereby appellee Oscar Myers promised and agreed to pay appellant during the term of said agreement, to wit, between the 2d day of December, 1918, and the 1st day of March, 1920, the indebtedness then due and owing by him to appellant, which indebtedness was in said agreement mutually agreed between appellant and said Oscar Myers to be the sum of $1,436.51, payment of which sum was by said agreement extended during the term thereof aforesaid; that in consideration of said extension of payment and other valuable considerations, the appellees Chas. Myers and J. I. Myers therein jointly, severally, and unconditionally promised, agreed, and guaranteed to pay said indebtedness at the time and place and in the manner in said agreement provided; that appellant in said agreement further promised and agreed to sell and deliver to said appellee Oscar Myers, f. o. b. cars at Winona, Minn. (the domicile of appellant), or any of its other regular places of shipment, goods and other articles manufactured and sold by appellant, and that said appellee Oscar Myers, in said agreement promised to pay appellant for such goods and other articles so sold to him from time to time during said term, on expiration thereof, to pay appellant the entire sum therefor then remaining unpaid; that the appellees Chas. Myers and J. I. Myers, in said agreement, jointly, severally, and unconditionally, promised, agreed, and guaranteed to pay for said goods at the time and in the manner in said agreement provided; that thereafter appellant sold and delivered to said Oscar Myers, f. o. b. cars at Winona, Minn., and Memphis, Tenn., goods and other articles in the sum of $377.-73; that appellees have failed and refused to pay appellant said sum of $1,436.51, which became due March 1, 1920, and have failed and refused to pay for said goods so sold amounting to the sum of $377.73, which also became due March 1, 1920, except the sum of $293.30, leaving a balance due in the sum of $1,520.94.

Appellees pleaded as defense that appellant and appellee Oscar Myers, in the year 1912, entered into a written contract to sell appellant's products in Texas in the territory described in the contract attached to appellant's petition; that said contract of 1912 was in violation of the anti-trust laws of Texas, in that it required appellee Oscar Myers to sell said products in said territory, to devote his entire time to said business, and that all prices must be as directed by the company; that immediately thereafter appellant modified said contract by circulars, letters, pamphlets, and books of instructions; that the modifications were that appellee Oscar Myers should be governed by the instructions, being that he should sell no products of any other concern, that he was to devote his entire time to said business, and that he was to confine his sales to said territory; that said appellee was governed by the instructions contained in said books, pamphlets, and letters; and that said instructions are in violation of the anti-trust laws of Texas.

Appellees further pleaded that appellant and said appellee Oscar Myers entered into other contracts in the years 1913, 1914, 1915, 1916, and 1917, all of which were supplemented by circulars, letters, pamphlets, books, and papers, and all of which contracts were in violation of the anti-trust laws of Texas in the particulars above mentioned, and that part of the consideration for the contract sued on was for goods sold under the contracts of 1912, 1913, 1914, 1915, 1916, and 1917; that appellant would sell appellee Oscar Myers its products and that he was required to and did resell them in the territory described in said contract, and that he was not allowed to sell these goods in any other territory than that designated in said contract, and was required to sell at retail prices fixed by appellant, and that appellant placed its own construction upon how

⬡⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said appellee should obey the contract; all of which rendered said contract null and void. And further pleaded that a part of the consideration for the contract sued on was for goods, wares, and such other products as appellant sold under and by virtue of the above contracts of 1912, 1913, 1914, 1915, 1916, and 1917 prior to the 1918 contract, which contracts are null and void, being in violation of the anti-trust laws of Texas.

The cause was tried by the court below without the assistance of a jury, resulting in a judgment denying appellant the right to recover on its demands against appellees.

Under the view we take of this appeal, it is only necessary, for a discussion of the several assignments presented, to consider the following provisions of the contract of December 2, 1918, upon which appellant's cause of action is based:

"This agreement made at Winona, Minn., U. S. A., this 2d day of December, A. D. 1918, between the J. R. Watkins Company, a Minnesota corporation, hereinafter called the company, party of the first part, and Oscar Myers, of Farmersville, Texas, party of the second part, witnesseth:

"That for and in consideration of the promises and agreements hereinafter contained, to be kept and performed by the party of the second part, the company promises and agrees to sell and deliver to the party of the second part, f. o. b. cars at Winona, Minn., or, at its option, at any of its regular places of shipment, any and all goods and other articles manufactured and sold or which may hereafter be manufactured or sold by it, * * * at the usual and customary wholesale price as the party of the second part may reasonably require for sale by him from time to time from the date hereof until the 1st day of March, 1920, as hereinafter provided in the following described territory, to wit: 'In the state of Texas, Collin county, east of east fork of Trinity river and north of the Cotton Belt Railway, except part lying between Pilot creek and the east fork of Trinity river at Clear Lake in the north part.' In consideration of the sale and delivery to him as vendee, f. o. b. cars at Winona, Minn., or other regular shipping point as above mentioned by said company, of the goods and other articles manufactured or sold by it in such reasonable quantities as he may require for sale in said territory as herein provided, and upon the terms herein expressed, the party of the second part promises and agrees, as soon as practicable after said goods and other articles are received, to make a thorough and personal canvass of said territory at least three times a year, at his own cost and expense, and to provide a good team and proper wagon and outfit therefor, and to sell said goods, or so much thereof as possible; and at all times during said term said party of the second part agrees to keep a complete record of all goods disposed of by him and on hand, and to make to said company complete, regular weekly written reports of all sales and collections, which reports, however, or any of them, may be waived by said company; * * * and it is mutually agreed between the parties hereto that the

party of the second part shall pay all transportation charges on goods he so purchases and all expenses and obligations incurred in connection with the canvass and the sale of said goods, and shall have no power or authority to make any statement or representation, or incur any debt, obligation, or liability of any kind whatsoever in the name of or for or on account of said company; and that said company shall in no way contribute to the expense of nor share the profits or losses on the sales of said goods by said second party, nor have any interest in the accounts due for goods sold by said second party, and no printed advertising or other matter of said company sent to or distributed by said second party shall be construed to change or modify the terms of this agreement, and that this is a complete, entire, and only agreement between said parties, and that it shall not be varied, changed, or modified in any respect except in writing executed by the parties hereto. * * * The party of the second part hereby promises to pay said company, at Winona, Minn., during the term of this agreement, the indebtedness due it for goods and other articles heretofore sold and delivered to him as vendee, f. o. b. cars at its regular places of shipment, payment of which is hereby extended during said term. The parties hereto, for the purpose of settling and determining the amount now due, hereby mutually agree that the said indebtedness now due said company is the sum of $1,436.51, which sum the said second party agrees to pay, and payment of which is extended as above provided. * * * And it is further mutually agreed that either of the parties hereto may terminate this agreement at any time by giving the other party notice thereof in writing by mail, and any indebtedness then owing from said second party to said company shall thereupon be and become immediately due and payable."

The other appellees, Chas. Myers and J. I. Myers, guaranteed the obligation of appellee Oscar Myers under the contract sued on. Appellee Oscar Myers made and entered into other contracts with appellant for the purchase of goods to be resold by him, as follows: March 9, 1912, December 2, 1912, December 1, 1913, December 1, 1914, December 1, 1915, December 1, 1916, and December 1, 1917. The contract of December 2, 1912, is substantially the same as the contract sued upon, except the contract of December 2, 1912, provided that the said Oscar Myers should devote the whole of his time and attention to making a diligent, continuous and personal canvass of said territory, and further provided that he should sell no other goods or articles except those purchased by him from said company; and the sureties in said contract of December 2, 1912, were C. A. Myers and W. E. Swanson.

The contracts of December 1, 1913, 1914, 1915, 1916, and 1917, were substantially the same as the contract sued upon except as to the guarantors. The total amount of the indebtedness asserted by appellant against appellees accrued from time to time under

the above contracts, including the one for 1918; there being a certain amount carried over at the termination of each contract to the execution of the succeeding one. Appellee Oscar Myers received every year wholesale and retail price lists from appellant after the execution of each contract, headed:

"Suggested Retail Prices for Texas.—We will not attempt to dictate the prices at which you will sell your goods to customers, but we believe the following will indicate the prices at which the goods should be sold, but you will use your own judgment as to what the selling prices will be."

Without contradiction, appellee Oscar Myers testified as follows:

"I obeyed their instructions. They claimed that they wanted every part of the whole country to have uniform prices and for us to follow strictly the uniform prices of the retail price list. I got that from the roll of honor which I received in 1918 and from letters. I was not allowed to sell their products in any other territory than that described in the contract. I received communications in regard to staying in my own territory and not to intrude on the other fellow's rights, and to 'get shed of the goods.' They instructed me to furnish a wagon and team and get on the road and stay there six days out of the week, to sell all I could for cash and on time and put out the goods to keep down competition. I received a wholesale and retail price list each year; they put one out every year. The retail price is not in the contract, but I received a price list in 1918 after I signed that contract. Retail and wholesale price lists always came after the contract. I received from appellant the roll of honor and notices, circulars, and such like, and they contained the way to carry on the business. The roll of honor was a paper published by appellant, and contained instructions as to how to run the business and how to put out cash sales, make collections, etc., and directed me to the 'Open Door of Success,' and 'Watkins' Key to Salesmanship,' received by me from appellant, which I studied, acted upon, and was guided by during the years 1914, 1915, 1916, 1917, and 1918, and up until I quit."

[1] By the first assignment appellant challenges the ruling of the trial court in permitting appellees to read in evidence the following provision of the contract of December 2, 1912:

"That the said Oscar Myers should devote the whole of his time and attention to making a diligent, continuous, and personal canvass of said territory, and that he should sell no other articles or goods during the term of the agreement except those purchased by him from said company."

Objection having been made thereto on the ground that same was—

"immaterial and irrelevant to any issue in the case, and prejudicial to the rights of appellant, and are provisions of a separate and independent contract entered into by appellant and said Oscar Myers, with C. A. Myers and W. E. Swanson as sureties, executed six years prior to the execution of the contract sued upon; and the said provisions quoted from the contract of December 2, 1912, and objected to by appellant, are not in the contract sued upon, and vary and contradict said contract."

Conceding that the objections when made should have been sustained, which we are not prepared to do in the light of the character of the issues raised in reference to the illegality of the contract sued upon as being in violation of the anti-trust statute, such error was waived by appellant's offering and reading in evidence the contract containing the provision objected to, and, in addition thereto, the contract of date March 9, 1912, containing the identical provision above quoted. Therefore said assignment is overruled.

[2, 3] Appellant's second assignment of error questions the correctness of the court's ruling in admitting the evidence of appellee Oscar Myers above set out over the following objections, to wit:

"The books, communications, papers and letters, if any, were received by defendant long prior to entering into the contract sued upon. The testimony was immaterial and irrelevant to any issue in the case on trial and prejudicial to the rights of plaintiff and varied and contradicted the written contract herein sued upon."

The evidence objected to was admissible to show, not only the construction placed by appellant on the terms of the contract under which is sought a recovery against appellees, but the manner in which the contract was executed on the part of appellee Oscar Myers, under such interpretation, and that in such performance appellee Oscar Myers accepted the interpretation placed on said contract by appellant. All of which was essential and proper to be considered as furnishing light on the relative positions of the parties to the contract and to uncover the power to dictate by a mere suggestion on the part of appellant by reason of the advantage the contract on its face secured to appellant over the acts and conduct of appellee under the contract sought to be enforced, to wit, the power to confine the sales to the territory designated in the contract, to curtail the amount of goods delivered, and to terminate the contract at any time, whereby all of the indebtedness then accrued under such contract would become immediately due and payable. The evidence was not admitted for the purpose of varying or contradicting the written instrument, and did not have that effect, but was only admitted for the purpose of showing the interpretation placed on the language employed in preparing a contract which on its face discloses a shrewd and studied attempt to circumvent the enforcement of a whole-

some law. If appellant had objected to the introduction of certain portions of the evidence on the ground that proper predicate to introduce secondary evidence had not been laid, we would have a different question before us and one which would have to be sustained. Whisenant v. Shores-Mueller Co. (Tex. Civ. App.) 194 S. W. 1175; Caddell v. J. R. Watkins Med. Co. (Tex. Civ. App.) 227 S. W. 226.

[4] Over the objections of appellant, appellees were permitted to read in evidence the following excerpts from "The Open Door to Success:"

"After satisfactory choice of territory, the salesman fills out the application blank and mails it to the company ————. When the contract is properly executed, it is mailed to the company, and after satisfactory investigation it is accepted and price list mailed to the salesman, who is then ready to go to work in the territory agreed upon. The contract provides that we shall furnish you with our line of goods at the customary wholesale prices at our factory in such quantities as may reasonably be required for sale in the territory agreed upon. * * * It provides that the salesman shall devote his time to a diligent and continuous canvass of his own territory at his own expense, and he shall sell only our line of goods within the limits of his territory, and that he shall sell no other goods than ours,"

—on the ground that said book was received by appellee Oscar Myers long prior to his entering into the contract sued upon and said excerpts were immaterial and irrelevant to any issue in the case on trial and prejudicial to appellant's rights, and varied and contradicted the written contract sued upon.

What we have said in disposing of the second assignment of error applies with equal force to appellant's third assignment presenting the above objection; therefore same is overruled.

[5, 6] The fourth assignment presents what would be a serious proposition if the case had been tried before a jury, in that the court permitted appellees to introduce and read in evidence a letter purported to be from appellant to one Luther Calvery, dated August 18, 1921, as follows:

"A serious complaint has reached us. Mr. Billingsly states that you have been selling to his customers. This should not be. Each Watkins man should sell only to the territory described in his contract. Read the inclosed booklet carefully. It is the golden rule of Watkins men we all observe."

This was error, but not such as to require a reversal of the case in the light of the entire record, especially as the trial was before the court without a jury, and there was ample evidence without said letter being considered, not only to justify but to authorize the judgment rendered, and we are to assume, in the absence of special findings of fact as in this instance that the trial court based its judgment upon the evidence properly before it; therefore said assignment is overruled.

[7] By the fifth assignment appellant calls into question the rendering of judgment in favor of appellees, claiming that under the uncontradicted evidence judgment should have been rendered in favor of appellant for the amount sued for, in that the contract sued upon does not violate the anti-trust laws of the state of Texas, and that the part of the indebtedness contracted to be paid by the terms of said contract, which accrued under prior contracts between appellant and appellee Oscar Myers, being brought forward in the contract sued upon, eliminated any vice which might have existed under any one of the previous contracts under which any portion of such indebtedness so brought forward accrued.

It may be conceded that, if the contract sued upon was not in violation, either by its terms or the construction placed thereon by the parties, of the anti-trust laws of Texas, appellant's contention under this assignment would have to be sustained. However, as we view the contract sued upon, its very terms are in violation of the anti-trust laws of Texas (see sections 1 to 3, Acts 28th Leg., c. 94) in that the following provision, viz.:

"The company (meaning appellant) promises and agrees to sell and deliver to the party of the second part (meaning appellee Oscar Myers) f. o. b. cars at Winona, Minn., or, at its option, at any of its regular places of shipment, any and all goods and other articles manufactured or sold, or that which may hereafter be manufactured or sold by it * * * at the usual and customary wholesale prices, as the party of the second part may reasonably require for sale by him from time to time from the date hereof until the 1st day of March, 1920, as hereinafter provided in the following described territory, to wit, the state of Texas in Collin county, east of east fork of Trinity river and north of Cotton Belt Railway, except part lying between Pilot creek and east fork of Trinity river at Clear Lake in the north part, * * * in such reasonable quantities as he may require for sale in said territory, as herein provided,"

—not only tends to create but to carry out restrictions in the free pursuit of the business of selling the merchandise so purchased and to lessen competition in the sale and purchase of such merchandise. Therefore, by the terms of the contract, we are of the opinion that same is void as being in contravention of the anti-trust laws of Texas. Whisenant v. Shores-Mueller, supra; Caddell v. J. R. Watkins Med. Co., supra; Newby v. Rawleigh Med. Co. (Tex. Civ. App.) 194 S. W. 1173.

The judgment of the court below is therefore affirmed.