**F. W. COOK CO. v. PAGE et al.   (No. 7760.)**

Court of Civil Appeals of Texas. San Antonio. May 4, 1927.

Monopolies ⬤⟶17(2)—Contract between brewer and dealer, giving exclusive territory to sell beer, held violative of anti-trust statutes (Vernon's Sayles' Ann. Civ. St. 1914, art. 7796).

A contract between brewer and dealer, giving dealer exclusive privilege of selling beer at wholesale in named counties, *held* void because in violation of anti-trust statutes (Vernon's Sayles' Ann. Civ. St. 1914, art. 7796), even though the beer was to be delivered by the brewer to the dealer in the state as an interstate shipment.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by the F. W. Cook Company against S. D. Page and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Kleberg & North, of Corpus Christi, for appellant.

H. R. Sutherland and Boone & Savage, all of Corpus Christi, for appellees.

FLY, C. J. This suit was instituted in June, 1912, by appellant, under the name of the F. W. Cook Brewing Company, an Indiana corporation, with its domicile in Evansville, that state, against Samuel D. Page, W. S. Rankin, and Lloyd Wade, to recover the sum of $2,564.80, which it was alleged that Page owed for beer shipped to him by appellant. It was alleged that in 1925 the name of appellant was so changed as to omit the word "Brewing," possibly in deference to the Eighteenth Amendment to the Constitution, and the Volstead Act (U. S. Comp. St. § 10138¼ et seq.). The case has been pending for about 15 years, and is on an open account, based on a contract between appellant and Page, the performance of which was secured by a bond on which Page was the principal and Rankin and Wade were the sureties. This is a second appeal; the former being decided on the refusal of the trial court to admit a verified account in evidence. 278 S. W. 958.

The pleadings of the parties are voluminous, and are not perceptibly simplified in the statements of the nature and result of the trial made by both parties. Appellees pleaded, in addition to a general demurrer and general denial, in reconvention for failure of appellant to abide by the contract, that the contract was in violation of the anti-trust laws of Texas and the United States, that appellant is a foreign corporation and doing business in Texas without a permit, and that the claim was barred by two and four years' limitations. It was also pleaded that the contract had been materially altered by appellant since its execution. The cause was submitted to a jury on twenty-three special issues, and judgment was rendered that appellant take nothing by its suit and pay all costs.

The contract forming the basis of the suit was dated April 27, 1910, in which Page, of Corpus Christi, Tex., was given the exclusive privilege of selling its draught and bottled beers at wholesale in Nueces, Duval, Bee, and Aransas counties, and appellant further agreed "to sell and deliver to him its beers, f. o. b. cars at Corpus Christi, Tex., in carload lots," giving the prices. Appellant agreed to pay all freight on "empty cooperage, cases, and bottles returned to it" by Page, and to give credit for such returned property. The items enumerated give the vital points of the contract, and its performance by Page was secured by his bond for $3,000, with W. S. Rankin and Lloyd Wade as sureties. The suit was for a balance of $2,564.80, due on beer shipped by appellant to Page, from June 14, 1910, to February 2, 1911; the whole account amounting to $8,879, with sundry credits amounting to $6,314.20. The jury found that there was no alteration of the contract, that on or about September 20, 1910, appellant shipped a car of beer to V. R. Sanchez, and Page got no profit from it, which amounted to $346.

There are twenty-three assignments of error under which five propositions are presented. The first questions the verdict of the jury

on the ground that it is not sustained by the evidence. The evidence of Page showed that under the contract he had fully paid the balance due on appellant's account, in profits appropriated by appellant which were due him.

Even though there had been no proof of payment of the account, the contract was not enforceable because in violation of Acts of 1903, p. 119 (article 7796, Vernon's Sayles' Ann. Civ. St. 1914). It is not necessary to discuss this point, as it has been directly decided in several cases. Texas Brewing Co. v. Templeman, 90 Tex. 277, 38 S. W. 27; Fuqua v. Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241. The contract was that the brewing company would deliver beer to Page in Corpus Christi and give him the execlusive privilege of selling the same in certain named counties, at wholesale, and that it would not sell to any one else in that territory. Although the beer was an interstate shipment, in the sense that it was carried from one state to another, the contract in violation of the statute was to be performed after its delivery in Texas, and it was subject to the Texas statutes. Segal v. McCall Co., 108 Tex. 55, 184 S. W. 188; Miller Brewing Co. v. Coonrod (Tex. Civ. App.) 230 S. W. 1099; Hubb-Diggs Co. v. Mitchell (Tex. Civ. App.) 231 S. W. 425. The contract, being illegal, could not be enforced, and consequently the judgment was correct for that reason, if no other.

As said by this court in Caddell v. Watkins Medicine Co., 227 S. W. 226:

"If under the agreement of the parties Caddell was obligated, as we have held, to confine this resale of the goods already delivered, * * * to the prescribed territory, or to resell them at a fixed retail price, or to devote all his activities to their sale to the exclusion of all other affairs, then such agreement—relating as it does to a product which has already been sold and delivered to a consignee in this state, and has become mixed with the common mass of property and is at rest in this state, and has accordingly lost its interstate character—is in contravention of our anti-trust statutes, and therefore invalid."

This case was filed in 1912, and has, for some reason, been on the docket for 15 years. It comes as a voice from the past, a long drawn out, prolonged echo from the days when King Gambrinus sat upon his throne, before the time of the Eighteenth Amendment to the Constitution, and before the Volstead Act had become so prolific a subject for discussion in America.

Since this case was filed, the curtain has gone up on some of the most tragic and terrible scenes ever enacted in the drama of the world's history. A World War, involving the civilization of the ages, and destructive of more treasure and human life than any war known in the annals of time; a war between the nations of the earth has been waged; systems have passed away; crowns have been torn from the brow of tyrants; Germany has been transformed from a great military camp, organized for the benefit of the Kaisers, into a peaceful republic; the throne of the Hapsburgs has toppled and been ground into the dust; Russia has destroyed the Czars and built up a worse tyranny, the Soviet government; Turkey has been dismembered and modernized; and Mussolini, in Italy, dictates to the occupants of the throne of the Cæsars. Yet, amid all these mighty changes, this suit for beer has maintained its place in the courts of the country. It furnishes food for complaint to those who denounce the law's delay, and gives a hint of Jarndyce v. Jarndyce, made famous by Charles Dickens in the romance of Bleak House, which work did so much to break down the technicalities in the Chancery Courts of England and cause a reformation that has made justice in that home of our forefathers no longer a dream, but a grand reality. We will endeavor to end the litigation.

The judgment is affirmed.