## NATIONAL AUTOMATIC MACH. CO. v. SMITH.
### No. 7505.

Court of Civil Appeals of Texas. Austin. Oct. 15, 1930.

H. P. Jordan, of Waco, for appellant.

Solon I. Reinhardt, of Taylor, for appellee.

BLAIR, J.

Appellant, as vendor, sued appellee, as purchaser, for $660.68, as the balance due on certain written contract of sale of boxing amusement machines, known as "K. O. Fighters," which contract was attached as a part of the petition. The trial court sustained appellee's special exception to the petition, on the ground that the contract was in violation of the anti-trust laws of Texas, and dismissed the action upon appellant's refusal to amend; hence this appeal.

The material portions of the contract read as follows:

"Whereas vendor manufactures and sells a coin operated boxing amusement device known as 'K. O. Fighters', hereinafter called 'Machines'; and

"Whereas purchaser desires to obtain the right to sell, lease, operate and deal in said machines within a certain area and desires to purchase the number of said machines hereinafter set forth.

"Now, therefore, in consideration of the mutual covenants herein contained and of the payments hereinafter recited, the parties hereto mutually covenant and agree as follows:

"1. Purchaser hereby buys and vendor hereby sells and agrees to convey to purchaser, subject to the provisions of paragraph four (4), Twelve (12) said machines for the aggregate sum of $3,240.00."

"4. (a) It is expressly agreed and understood between the parties hereto that title to all machines will remain with vendor until the entire purchase price including any notes given in settlement thereof shall have been paid in full; provided, however, that purchaser shall hold said machines at his own risk pending the vesting of title in him, and any injury, loss or destruction of same after delivery to carrier shall not release purchaser from its obligation to pay the said purchase price."

"5. (a) Vendor hereby grants unto purchaser the right to sell, lease, operate and otherwise deal in said machines, subject to the provisions of paragraph four (4), within the following described territory, to-wit: The following Texas counties (62 Texas counties) for the period of five years from the date hereof.

"(b) For so long during said period of time as purchaser shall keep and perform all of the covenants and agreements by it to be kept and performed and while this agreement shall remain in force and effect, vendor shall not sell, lease or operate any of said machines within the above described territory and shall not authorize any person, firm or corporation, other than purchaser, so to do and shall pay over to purchaser all net sums which may be recovered by vendor during said period from third persons as liquidated damages by reason of the sale, lease, operations or other dealing in said machines within the above described territory by such third persons in violation of the terms and provisions of any contract which vendor now or at any time may have with such third persons concerning said machines.

"6. For the period of five (5) years from the date hereof purchaser shall not sell, lease, operate, deal in, use, remove or cause or allow to be removed any of said machines outside the above described territory. For each said machine sold, leased, operated, dealt in, used, removed or caused or allowed to be removed any of said machines outside the above described territory. For each said machine sold, leased, operated, dealt in, used, removed or caused or allowed to be removed by purchaser outside the said territory prior to the expiration of the period of time above set forth in this paragraph vendor shall be entitled to recover or to retain from said deposit the sum of one hundred fifty dollars ($150.00) as liquidated damages and not as a penalty.

"7. Any orders submitted by purchaser for machines in excess of the number purchased hereunder which may be accepted by vendor shall be deemed to be subject to all the conditions to which the sale of machines under this agreement is subject.

"8. It is understood by both parties hereto that applications for letters patent to cover said machines are now pending in the United States Patent Office and all rights therein have been assigned to vendor."

■ Appellant contends that the contract was not in violation of the anti-trust laws because it was one for the sale of merchandise, and, although limiting the actions of the parties as to time and space or territory, it did not do so as to the price of resale. The contention is not sustained. The contract is a sale of 12 K. O. Fighter machines to appellee for a stipulated price. The condition with respect to the title not passing to the machines until the balance of the purchase price was paid is but a mortgage under Texas statutes, and the title did pass to appellee upon delivery of the machines. The contract clearly restricted the sale or lease of the machines so purchased by appellee under the contract to the 62 Texas counties named. Subdivision 7 of article 7426 inhibits a contract "to abstain * * * from * * * the * * * sale of merchandise * * * partially or entirely within the State of Texas, or any portion thereof." The authorities cited below settle beyond question appellee's counter proposition that, "where a vendee is by contract restricted to certain designated territory in which to sell or deal in certain merchandise which he purchased under the contract, the contract is void and in violation of the anti-trust laws of Texas." Articles 7426 to 7447 of 1925 R. S. of Texas; American Brewing Ass'n v. Woods (Tex. Com. App.) 215 S. W. 448; Jersey-Creme Co. v. McDaniel Bros. Bottling Co. (Tex. Civ. App.) 152 S. W. 1187; Rawleigh Co. v. Land (Tex. Civ. App.) 261 S. W. 186; Rawleigh Co. v. Land, 115 Tex. 319, 279 S. W. 810; Troy Buggy Works v. Fife & Miller (Tex. Civ. App.) 74 S. W. 956, 957; Rawleigh Co. v. Harper (Tex. Com. App.) 17 S. W.(2d) 455; 41 Corpus Juris, p. 144, § 129; Cook Co. v. Page (Tex. Civ. App.) 294 S. W. 934; Watkins Co. v. Myers (Tex. Civ. App.) 255 S. W. 1002; Caddell v. J. R. Watkins Med. Co. (Tex. Civ. App.) 227 S. W. 226.

But appellant contends that since the contract shows it was assignee of patent rights to the merchandise sold to appellee, it had the right to make such restrictions, or to grant such exclusive rights to its vendee as it might see fit and proper, vendee agreeing thereto; and that such restrictions and rights granted were not in violation of the anti-trust laws of this state. In this contention appellant relies upon the rule announced by this court in the case of Coca-Cola Co. v. State (Tex. Civ. App.) 225 S. W. 791, 793, that: "The owner of a patent right, copyright, or trade-mark, having the exclusive right to manufacture and sell the article protected thereby, and being under no legal obligation to grant such right to another, may impose upon his assignee such restrictions as he may see proper, and to which his assignee will agree, including the price at which the article may be sold, the territory in which it may be manufactured and sold, the material that may be used in its manufacture, or in connection therewith."

■ But that rule has no application to the contract here involved, because it does not relate to the patent right or to any merchandise sold in connection with the patent right, but relates to merchandise manufactured and actually sold under a pending patent which appellant asserted in the contract it is owner. The case is therefore controlled by the further rule announced in the Coca-Cola Case, that: "The owner of an article protected by a patent, copyright, or trade-mark, when he has manufactured and sold the same, cannot impose restrictions upon his vendee as to the future sale of the same. Having parted with his ownership therein, it enters the channels of trade as an article of commerce, and is thereafter beyond his control."

The distinction between these rules is clearly pointed out in the Coca-Cola Case and the authorities there cited, and needs no discussion here.

■ Nor can appellant's contention be sustained that it appeared from the pleadings that the contract sued upon was one involving interstate commerce. The contrary clearly appears, because the restrictions imposed apply to acts of the vendee in the sale of the merchandise after the interstate commerce transactions involved had been completed. As above pointed out, the contract of purchase was completed when the merchandise was delivered to appellee, and no other interstate commerce transaction could have been involved under the terms of the contract. Therefore the restrictions which applied to acts of appellee to be performed after all interstate commerce transactions ceased rendered the contract void as violative of the anti-trust laws of Texas. Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Watkins Med. Co. v. Johnson (Tex. Civ. App.) 162 S. W. 394; Segal v. McCall Co., 108 Tex. 55, 184 S. W. 188; Rawleigh Med. Co. v. Gunn (Tex. Civ. App.) 186 S. W. 385; Armstrong v. W. T. Rawleigh Med. Co. (Tex. Civ. App.) 178 S. W. 582; Rawleigh Co. v. Harper (Tex. Civ. App.) 7 S. W.(2d) 892; Henderson Tire & Rubber Co. v. Roberts (Tex. Com. App.) 12 S. W.(2d) 154; Whisenant v. Shores-Mueller Co. (Tex. Civ. App.) 194 S. W. 1175; State v. Willys-Overland (Tex. Civ. App.) 211 S. W. 609; Albertype Co. v. Gus Feist Co., 102 Tex. 219, 114 S. W. 791; Caddell v. J. R. Watkins Med. Co. (Tex. Civ. App.) 227 S. W. 226; Cook Co. v. Page (Tex. Civ. App.) 294 S. W. 934.

The judgment of the trial court will be affirmed.

Affirmed.